24-3469

TO: THE HONORABLE CLERK OF COURT
    FOR THE UNITED STATES COURT OF APPEALS
    FOR THE NINTH CIRCUIT
    P.O. BOX 193939
    San Francisco, California
    94119-3939

**RECEIVED**
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**JUL 15 2024**

FILED_____  _____
DOCKETED_____
                    DATE          INITIAL

FROM: JUSTIN KA'ANOI
      USMS # 91349-022
      FCI SAFFORD
      P.O. BOX 9000
      Safford, Arizona
      85548

RE: THE FILING OF A REQUEST FOR CERTIFICATE OF APPEALABILITY UNDER
    28 U.S.C. § 2253(c)(2), AND FEDERAL RULES OF APPEALLATE PROCEDURE
    22(b)(2), IN CASE NO. 24-3469, U.S. DISTRICT COURT NO. 1:17-cr-
    00555-DKW-1;

    Dear Clerk,

    enclosed herein is a Request for Certificate of Appealability under 28
U.S.C. § 2253(c)(2) as to the denial of a motion pursuant to 28 U.S.C. §
2255.

    That, the contents therein are to make a " substantial showing of the
denial of a constitutional right(s), " i.e., the Sixth Amendment Right(s) to
the effective assistance of counsel.

    Upon filing the notice of appeal, I received the Docketing Notice in
due course, to which directed that no briefing be made until a certificate of
appealability was issued. (See DKT. Ent. 2.1)

    However, this presentment herein is to the " showing and demonstration
of the denial of the constitutional right, " and I respectfully request that
it be entered into the file for consideration in that matter under 28 U.S.C.
§ 2253(c)(2), and Fed. R. App. P. 22(b)(2).

    This to made an adequate review of the matter below. Nonetheless, let
this be submitted as to assist in making any determinations to assist in the
showing as required, respectfully.

    I am thanking you in advance, and I patiently await your determination,
until then, I am presented in request, respectfully, and Sincerely,

                                    JUSTIN KA'ANOI

            P. 1 of 1                        7/11/24

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT


UNITED STATES OF AMERICA,    )

     APPELLEE,    )

    )

    )

    V.    )    Case No. 24-3469

    )

    )

JUSTIN KA'ANOI (WILCOX),    )

     APPELLANT.


---

REQUEST FOR CERTIFICATE OF APPEALABILITY

PURSUANT TO 28 U.S.C. § 2253(c)(2)

AND FED. R. APP. P. 22(b)(2)

---


ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI'I
HONORABLE JUDGE DERRICK K. WATSON, PRESIDING IN CRIMINAL CASE NO. 1:17-cr-00555-DKW, FROM A PROCEEDING PURSUANT TO 28 U.S.C. § 2255

        APPEALANT, JUSTIN KA'ANOI, PRO SE
        FCI SAFFORD, P.O. BOX 9000
        Safford, Arizona [85548]

        APPELLEE, U.S. DEPARTMENT OF JUSTICE
        OFFICE OF THE U.S. ATTORNEY FOR THE
        DISTRICT OF HAWAI'I
        300 Ala Moana Blvd. RM. 6-100
        Honolulu, Hawaii [96850]

I. TABLE OF CONTENTS:                                    PAGE NUMBERS

II. TABLE OF AUTHORITIES...................................... i-ix

III. ISSUES PRESENTED FOR REVIEW .................................ix

IV. STATEMENT OF THE PRESENTMENT-APPEAL.........................i

V. PROCEDURAL HISTORY OF PRESENTMENT BEFORE THE COURT ..........2-9

VI. LEGAL STANDARD ...........................................10-11

     A. 28 U.S.C. § 2253(c) ....................................10

     B. 28 U.S.C. § 2255 ......................................11

     C. STANDARD OF REVIEW UNDER 28 U.S.C. § 2255 ..............11

VII. SUBSTANTIAL SHOWING OF THE DENIAL OF A CONSTITUTIONAL
     RIGHT TO THE SIXTH AMENDMENT RIGHT TO THE EFFECTIVE
     ASSISTANCE OF COUNSEL DURING AND THROUGHOUT THE
     " PRETRIAL, ' PLEA NEGOTIATIONS PROCESS " AS A
     WHOLE, " INCLUDING THE SENTENCING PHASE OF THE
     CIMINAL ACTION: " .......................................12-56

     (i) APPEAL TO A PROCEEDING PURSUANT TO
        28 U.S.C. § 2255.....................................12

        1. The District Court Committed Error and otherwise
          abused it's Discretion in Denying relief in the
          Proceeding pursuant to 28 U.S.C. § 2255 ...........12

        2. The District Court Abused it's discretion
          in failing to hold a hearing pursuant to
          28 U.S.C. § 2255(b) ...............................12

     (ii) JUDGEMENT HERE ON REVIEW: .........................13-56

     a. Counsel Gave ineffective advice during the plea
       negotiation's phase in regards to a " statutoy
       mandatoy life sentence " as to the application of
       a recidivist enhancement under 21 U.S.C. § 851. .....1-20

     b. Counsel did not Adequately Communicate with
       Appellant .........................................20-22

     c. Counsel Did Not Obtain Discovery Necessary to advise
       Appellant to make an intelligent decision..........22-24

i

TABLE OF CONTENTS CONT'D                          PAGE NUMBERS

      d. Appellant did not knowingly and intelligently
         enter into cooperation efforts with the
         government and was induced by threats and
         coercion, by the posecution and his counsel
         including being baited and switched in the
         overall process: ....................................1-36

      e. Appellant did not knowingly and intelligently
         accept the terms of the written plea agreement
         and was mis-advised and mislead as to the true
         nature of such in a bait and switch offer; ............1-36

      f. Counsel was laboring under a Conflict of
         interest .........................................36-41

  (iii) The district court errored and otherwise abused it's
      discretion in denying request for econsideration
      under Fed. R. Civ. P. 59(e) ...........................41-44

  (iv) Subsequent Attorney Mak Kawata rendered Ineffective
      Assistance of Counsel in violation of the Sixth
      Amendment in continuation and through the sentencing
      phase as a whole, including the withdraw proceeding
      under Fed. R. Crim. P. 11..................................44-56

VIII. CONCLUSION......................................................56

XI. CERTIFICATE OF SERVICE...........................................57

APPENDIX AS REQUIRED:

II. TABLE OF AUTHORITIES:

CASES CITED:                                               PAGE NUMBERS

Allen V. Ornoski, 435 F. 3d 946. 951 (9th Cir. 2006)................10

Bannister V. Davis, ___U.S.___, 140 S.Ct. 1698,
1702, 207 L.Ed. 2d 58 (2020) ..........................................44

Barefoot V. Estelle, 463 U.S. 880, 893 n. 4, 103 S.Ct.-
3383, 77 L.Ed. 2d 1090 (1983) ........................................10

Blackledge V. Allison, 431 U.S. 63, 82 n. 25, 52 L.Ed.
2d. 136, 97 S.Ct. 1621 (1977) ........................................19

Bragg V. Galaza, 242 F. 3d 1082, 1088 (9th Cir. 2001)................54

Culyer V. Sullivan, 466 U.S. 335, 347, 100 S.Ct. 1708,
64 L.Ed. 2d 333 (1980) ...............................................37

Doe V. Woodford, 508 F. 3d 563, 569 (9th Cir. 2007) .............20,21,34

Erp V. Ornoski, 431 F.3d 1058 (9th Cir. 2005) ..................19,21,40

Ex Parte Wall, 107 U.S. 265, 304, 27 L.ed. 552 (1881).................43

Hayes V. Woodford, 301 F. 3d 1054, 1070 (9th Cir. 2002) ..............20

Iaea V. Sunn, 800 F. 2d 861, 865 (9th Cir. 1986) ....................32

Johnson V. Uribe, 682 F. 3d 1238, 1243 (9th Cir. 2012) ..............16

Khoja V. Orexigen Therepeutics, Inc.,
899 F. 3d 988, 999 (9th Cir. 2018) ...................................43

Lafler V. Cooper, 132 S.Ct. 1376, 1388, 182 L.Ed.
2d. 398 (2012) .......................................................16

Machibroda V. United States, 368 U.S. 487,
494, 82 S.Ct. 510, 7 L.Ed. 2d. 473 (1962) ...........................18

Massaro V. United States, 538 U.S. 500, 505, 123 S.Ct. -
1690, 155 L.Ed. 2d 714 (2002)........................................45

TABLE OF AUTHORITIES CONT'D

CASES CITED CONT'D:                                    PAGE NUMBERS

McMann V. Richardson, 397 U.S. 759, 771, 90 S.Ct.-
1441, 25 L.Ed. 763 (1970) ..............................................18

Melton V. D.W. Neven, 712 Fed. Appx. 610, 611 (9th Cir. 2017).........20

Mickens V. Taylor, 535 U.S. 162, 171, 122 S.Ct.
1237, 152 L.Ed. 2d 291 (2002) ........................................37

Miles V. Martel, 696 F. 3d 889 (9th Cir. 2012) ...................16,18,27

Missouri V. Frye, 132 S.Ct. 1399, 1407,
182 L.Ed. 2d 397 (2012) ..............................................16

Miller-El V. Cockrell, 537 U.S. 322, 483,
338, 123 S.Ct. 1029, 154 L.Ed. 2d 931 (2003) .........................10

Nunes V. Mueller, 350 F. 3d 1045, 1051 (9th Cir. 2003) ...........1,11,18,28
                                                                  46,56
Rishor V. Ferguson, 822 F.3d 482,489-95 (9th Cir. 2016) ..............44

Rodriguez-Penton V. United States, 905 F. 3d -
481,488 (6th Cir. 2018) ..............................................39

Sch.Dist.No. 1J Multnomah Cty., Or. V. -
ACandS, Inc., 5 F. 3d 1262,1263 (9th Cir. 1993) ....................1, 42

Silva V. Woodford, 279 F. 3d 825, 832 (9th Cir. 2002) ................10

Strickland V. Washington, 466 U.S. 688, 695, 104 S.Ct. -
2052, 80 L.Ed. 2d 674 (1984) .........................................20

Slack V. McDaniel, 529 U.S. 473, 483-84,
120 S.Ct. 1595, 146 L.Ed. 2d 542 (2000) ..............................10

Tripati V. Henman, 843 F. 2d 1160, 1162 (9th Cir. 1988) ..............11

Turner V. Calderon, 281 F. 3d 851, 881 (9th Cir. 2002) ...........22,28,46

United States V. Baptista, No. CR-10-0050, PJH,
2011 U.S. Dist. LEXIS 22300, at * 11-12 (N.D.Cal. Feb. 23, 2002) ....22,24

United States V. Barron, 172 F. 3d 1153,
1157 (9th Cir. 1999) .................................................11

TABLE OF AUTHOITIES CONT'D

CASES CITED CONT'D:                    PAGE NUMBERS

United States V. Baswell, 501 F. 3d 1147
1150 n. 1 (9th Cir. 2007) ............................................45

United States V. Burrows, 872 F. 2d 915, 917 (9th Cir. 1989)..........15

United States V. Chacon-Palomares, 208 F. 3d 1157,-
1159 (9th Cir. 2000) ...............................................18,20,28
                                                     34

United States V. Collazo, 984 F. 3d 1308, 1315 (9th Cir. 2020).........51

United States V. Cosme Rodriguez, 49 F.4th 1205 (9th Cir. 2022).......12,35
                                                     49

United States V. Crow, 651 Fed. Appx. 686, 688 (9th Cir. 2016)........14

United States V. Cruse, 805 F. 3d 795, 816 (7th Cir. 2014) ...........55

United States V. Garcia, 757 F.3d 315-16 (D.C. Cir. 2014) ............51

United States V. Glover, 531 U.S. 198, 121 S.Ct. 696-
148 L.Ed. 2d 604 (2001) ............................................52,54

United States V. Hatcher, 414 Fed. Appx. 944, -
946-47 (9th Cir. 2011) .............................................48

United States V. Hayman, 342 U.S. 205, 207, -
n. 1, 72 S.Ct. 263, 96 L.ed. 2d 232 (1952) .........................11

United States V. Jackson, 207 F. 3d 910, 913 7th Ci. 2000) ...........51

United States V. Jeronimo, 398 F.3d 1149, 1156 (9th Cirr. 2005) .......47

United States V. Justin Wilcox, No. 21-10188, -
2022 U.S. App. LEXIS 17191 (9th Cir. June 27, 2022) .................48

United States V. Kupa, 976 F. Supp. 2d 417 (E.D.N.Y. 2013) ...........14

United States V. LaFuente, 8 F.3d 1333, 1337-38 (9th Cir. 1993) .......14

United States V. Leonti, 326 F. 3d 1111 (9th Cir. 2003) .............15,34

United States V. Loveland, 825 F.3d 555,566-63 (9th Cir. 2016)........52

United States V. Manzo, 675 F.3d. 1204, 1210 (9th Cir. 2012)..........53

United States V. McTiernan, 546 F.3d. 1160 (9th Cir. 2008) ...........23

TABLE OF AUTHORITIES

CASES CITED CONT'D                                     PAGE NUMBERS

United States V. Martinez, 657 F. 3d 811, 815 (9th Cir. 2011) .........51

United States V. Martinez-Vega, 826 F. 3d 514 (D.C. Cir. 2015) ........51

United States V. Mayes, 370 F. 3d 703, 711 (7th Cir. 2004) ...........51

United States V. Michael Miske, et. al., No. 19-cr-00099-
DKW-KJM-1 (D. Haw.) ..................................................6,40

United States V. Mikels, 236 F. 3d 550, 551-52 (9th Cir. 2001)........10

United States V. Moe, 781 F. 3d 1120, 1125 (9th Cir. 2015) ...........52

United States V. Monreal, 301 F. 3d 1127, 1130 (9th Cir. 2002) ........11

United States V. Murray, 897 F.3d. 298, 308 (D.C. Cir. 2018) ..........52

United States V. Rodrigues, 347 F. 3d 818, 823 (9th Cir. 2003) ........1

United States V. Rodriguez-Vega, 797 F. 3d 781,-
788 (9th Cir. 2015) ............................................12,35,39

United States V. Ross, 511 F. 3d 1233,
1236-37 (9th Cir. 2008) ............................................18

United States V. Transfiguration, 442 F.3d 1222, 1228 (9th Cir. 2006)..26

United States V. Winkles, 795 F. 3d 1134 (9th Cir. 2015) .............42

United States V. whitney, 673 F. 3d 965,
967 n. 7 (9th Cir. 2011) ......................................49,50,51,
                                                              52,55


FEDERAL STATUTES CITED:

28 U.S.C. § 2253(c)(1) ..............................................1.10

28 U.S.C. § 2253(c)(2) .........................................1,7,8,9,10,
                                                              11,15,19,
                                                              24,34,56

28 U.S.C. § 2255 ..............................................2,7,8,10,11
                                                              12,15,19,23
                                                              25,28,42,43
                                                              44,47,48,56

TABLE OF AUTHORITIES CONT'D

FEDERAL STATUTES CONT'D:                              PAGE NUMBERS

28 U.S.C. § 2255(b) ................................................4,6,9,12,
                                                               24,34,39,
                                                               41,43,56

28 U.S.C. § 2255, Rule 6(a) ........................................42

21 U.S.C. § 841(b)(1)(A) ...........................................13

21 U.S.C. § 851 ...............................................13,14,17,
                                                               21

18 U.S.C. § 3553(e) .............................................30,31

        U.S. SENTENCING GUIDELINES:

U.S.S.G. § 2D1.1(c)(2) ..........................................49,50

U.S.S.G. § 3B1.1(a) .............................................53,54,55

U.S.S.G. § 3B1.1, cmt. n. 2 (2011) .................................50

U.S.S.G. § 5K1.1 ................................................30,31


        FEDERAL RULES OF CRIMINAL PROCEDURE:

Fed. R. Crim. P. 35(b) ..........................................30,31


        FEDERAL ULES OF CIVIL PROCEDURE:

Fed. R. Civ. P. 45(a)(1)(D) ........................................41

Fed. R. Civ. P. 59(e) ..........................................1,7,41

        FEDERAL RULES OF EVIDENCE:

Fed. R. Evid. 201(b) ...............................................43

TABLE OF AUTHORITIES CONT'D

FEDERAL RULES OF APPEALLATE PROCEDURES:          PAGE NUMBERS

Fed. R. App. P. 22(b)(1) ...............................................10

Fed. R. App. P. 22(b)(2) ..........................................1,7,8,9,
                                                              10,11


U.S. CONSTITUTION/CONSTITUTIONAL RIGHTS:

The Sixth Amendment ...............................................2,3,20,25,
                                                              44


OTHER PROVISIONS:

ABA Standards for Criminal Justice,
Prosecution and Defense Function 4-4(a)(3d ed. 1993) ...................28

viii

III. ISSUES PRESENTED FOR APPEAL:

> ISSUE # 1: Does this Appellant make a substantial Showing of the
> Denial of a Sixth Amendment Right to the Effective
> Assistance of Counsel, During and throughout the
> Pretrial, Plea Negotiation's phase of the Criminal
> Prosecution as a whole ?

> ISSUE # 2: Did the district court commit error and otherwise
> abuse it's discretion in denying relief under
> 28 U.S.C. § 2255 as to the claim of the violation
> of the Sixth Amendment Right to the Effective
> Assistance of counsel, during and throughout the
> Pretrial, plea negotiation's phase of the criminal
> prosecution as a whole?

> ISSUE # 3: Did the district court commit error and otherwise
> abuse it's discretion in failing to hold a hearing
> under 28 U.S.C. § 2255(b), as to numerous factual
> contestations submitted in sworn testimony as to
> out-of-court occurences leading to the acceptance of
> a plea agreement, claimed to have been the result of
> inadequate legal advice, and not knowing and
> intelligently accepted ?

> ISSUE # 4: Did the district court commit error and otherwise
> abuse it's discretion in denying relief under
> 28 U.S.C. § 2255, as to the claim of the violation
> of the Sixth Amendment right to the Effective
> Assistance counsel at the Sentencing proceeding of
> the criminal prosecution, for failure to understand
> the U.S. Sentencing Guidelines and the application
> of the Leader/Organizer role enhancement under USSG-
> § 3B1.1(a) ?

> ISSUE # 5: Did the district court abuse it's discretion in
> failing to hold a hearing under 28 U.S.C. § 2255(b)
> as to factual contested matter submitted in sworn
> testimony in out-of-court matter, in regards to
> a withdraw proceeding leading through the sentencing
> proceeding in the criminal prosecution ?

ix

## IV. STATEMENT OF THE PRESENTMENT-APPEAL:

This Appeal is presented as to the denial of a motion pursuant to 28 U.S.C. § 2255. This as to the violation of the Sixth Amendment right(s) to the " [effective] assistance of counsel ' during the pretrial-plea negotiations phase ' of the criminal prosecution. "

Also, the same right to the " effective assistance of counsel " at the sentencing proceeding which under " the totality of the circumstances " lead to his 294 month sentence, respectively.

Appellant herein claims that the district court for the District of Hawai'i, abused it's discretion and otherwise clearly errored in refusing to grant equitable relief, and hold a prompt hearing under 28 U.S.C. §§ 2255, and 2255(b). See Nunes V. Mueller, 350 F. 3d 1045, 1051 (9th Cir. 2003), and United States V. Rodrigues, 347 F. 3d 818, 823 (9th Cir. 2003)

Moreover, Appellant did make for the filling of a motion for reconsideration under Federal Rules of Civil Procedure 59(e), based on " new ly discovered evidence " that went directly to the integrity of the " conflict of interest " portion of the Sixth Amendment claim, and the overall credibility of the government's sworn testimony that was presented in the Section 2255 proceeding was too " clearly erroneous and ' [an] abuse of discretion.'" See Sch. Dist. No. 1J Multnomah Cty., Or. V. ACandS, Inc., 5 F. 3d 122, 1262-63 (9th Cir. 1993)

Ultimately, the district court denied a " certificate of appealability " under 28 U.S.C. § 2253(c)(1), and this appeal requests the exercise of this Court of Appeals authority under 28 U.S.C. § 2253(c)(2), and Federal Rules of Appellate Procedure 22(b)(2), respectfully.

## V.  <u>PROCEDURAL HISTORY OF PRESENTMENT BEFORE THE COURT:</u>

Before this Honorable Court of Appeals for the Ninth Circuit is a re quest for review of a denial of a motion pursuant to 28 U.S.C. § 2255, from the United States district court for the district of Hawai'i in criminal case no. 17-cr-00555-DKW (Civil Case No. 23-cv-00297-DKW-KJM). (See Doc. #- 661  See also Appendix #'s 1-6)

This to the presentment for a Motion for Collateral Relief pursuant to 28 U.S.C. § 2255, was filed on July 17, 2023. (Doc. #'s 645-647) This presentment consisted of an AO 243 Application, a 43 page Motion for Collateral relief and Request for Evidentiary Hearing, supported by an 23 page Affidavit of Truth containing sworn factual assertions, (Attachment A), this appended several documents of the record, and outside of the record at Exhbits 1-3, and a 65 page Memorandum of Law in Support of the Motion, collectively " Motion for Collateral Relief pursuant to 28 U.S.C. § 2255. (id. Appx. #'s 1-4)

This as to the Asserted Claim(s) Presented that " Petitioner's conviction [is] rendered in violation of the Sixth Amendment Right to the " Effective Assistance of Counsel ' during the pretrial, plea negotiations phase ' of the criminal prosecution, " and " Petitioner's Sentence [is] rendered in violation of the Sixth Amendment Right(s) to the " Effective Assistance of Counsel. " (id. at Mem. of Law at 4)

These claim(s) presented detailed and specific facts and legal contentions that, the Appellant's counsel was ineffective to a Constitutional magnitude, and resulted in the acceptance of a plea agreement, that Appellant did not " knowingly and intelligently accept, " in violation of the Sixth Amendment.

P. 2

These facts consited of " inside and outside of the record occurences
with ' documentary evidence in support. '"   Furthermore, that Counselman
was laboring under an " actual conflict of interest, " and other matters
that resulted in a clear cut violation of right(s) guaranteed.  Also, this
ineffective assistance spilled into the sentencing process, that attached
subsequent counsel, and a subsequent " withdraw process antecedent to the
actual sentencing process. " (id. Mem of Law at 43-47) (Appx. # 1)

Leading into the actual sentencing process, Appellant received " newly
discovered evidence " from credible sources of information that supported
numerous material facts that were pertinent leading into the " presentment
and acceptance of the plea agreement ' during the plea negotiations phase '
of the criminal prosecution. '"   The government conceeded to the facts,
however, subsequent counsel advised to accept the concession as opposed to
" renewing the relevant motion for withdraw ' with false and misleading
legal advice ' that Appellant was to appeal the process directly as a
whole. " (id. at 47)

This ocurred at the sentencing hearing that continued in that vein.
Therein, the district court made numerous findings outside of the four
corners of the plea agreement, and applied a sentencing enhancement that
was never contemplated by Appellant in the first instance nor part and
parcel of the overall negotiations and settement of the case.  This
resulted in a " leader/organizer enhancement " that the facts and record
did not support, and was otherwise errneous. Again, Counsel brokedown and
did not adequately address the matter that resulted in the 294 month
sentence for a non-violent drug offense. (id. 47-61)

P. 3

Appellant sought a hearing pursuant to 28 U.S.C. § 2255(b), and call forth all of the prosecution and attorney's to explain to the district court the events leading to the indictment, the notice of the filling of a exposure to a " statutory mandatory life sentence " upon conviction under 21 U.S.C. § 851, for the " three (3) ' prior felony drug offenses.'"

This of which forced Appellant to cooperation endeavors, including the ultimate written plea agreement, and other issues related to the presentment, " respectively.

On October 31, 2023, the government responded to the presentment which appeneded to Sworn delcarations from the original trial attorney Thomas Otake, and subsequent counselman Mark S. Kawata. (Doc. # 656, pg.'s 1-40) This Response, did not however, contain any sworn testimony from the AUSA Mark Inciong, that of which was the focus of numerous material facts embedded in the 2255 motion. (id.) (Appx. # 5)

The factual matter submitted by Attorney Otake was virtually identical to the sworn testimony taken from the wtihdraw proceedings in the criminal action. (id. Doc. # 656-1, 2-9) However, it was supplemented with factual matter that Appellant claimed in regards that was missing from the original declaration in terms of the " threat duress and coercion " that was placed upon Appellant by the prosecution, inclusing AUSA Inciong as to the statutory mandatory minimum life sentence per the " prior felony drug convictions " and the constitutionally defective advice that Otake gave thereto, pre and post FSA. (id. at ¶¶ 20-23)  Also, in terms of the cooperation advice and ultimate agreement. (id. at ¶¶ 6-15)

Nevertheless, conflicted Appellant's sworn assertions.

P. 4

Pertinent hereto this claim of a Sixth Amendment violation Otake sworn under the pain and penalty of perjury that, " [he] was assured early in the representation that there was not conflict " per his relationship with Mike Miske. (id. at ¶ 19) This after stating, clearly that, " With respect to Wayne Miller, .... ' I am not friends with [Miller] ' and have never represented him. " (id. at 4, ¶ 9)

Otake made numerous factual contestations that controverted Appellant's claims, respectively. The government therewith, sought to have the claim(s) denied without an evidentiary hearing. (id. Doc. 656, at 1-40)

On December 5, 2023, Appellant made a filing of a reply brief making known that these contestations should warrant a hearing to aid the district court in the decision making upon his claims. (Doc. # 659) (Appx. # 6)

Appellant also drew attention to the outright falsity of the factual assertions and the inconcevability. Nevertheless, called for the Court to hold this hearing or otherwise grant equitable relief under Section 2255. (id. at 41-49)

On Janurary 30, 2024, the district court denied relief upon the claims before it, including an evidentiary hearing, and a certificate of appealability in a 45 page decision on the merits. (Doc. # 661) (Appx. # 7) [1]

As to the Sixth Amendment claims, the district court divided them into sub-arguments, and otherwise parsed the claims accordingly for review. (id. at 8, and 10, and n. 4, also 11)

---

n. 1:  This 45 page decision was issued in the pinnacle of one of Hawai'i's largest Racketerring Trial's against one Mike Miske et al., and to whom is at the crux with Appellant's " conflict of interest " claim.

P. 5

The Court denied relief on the merits of the Sixth Amendment claims before it, and made several credibility analysis hearing all factual contentions in favor of the government. (id. 14) This by measuring such to the record, and " plea colloquy " for purposes of the claims that " Appellant's plea of guilt ' was not knowing and intelligent... " (id. at 16, 18, 21 ) The Court's order denying relief wholly misses the 2255's claims that it was the " ineffective assistance of counsel ' during and throughout the pretrial, plea negotiations phase ' of the criminal proceeding, that ' resulted in Appellant's acceptance of the written plea agreement, including the cooperation agreement, " that worked to a prejudical effect, respectfully.

Moreover, in spite of the factual contestations in sworn factual documentation, that occurred outside of the record the district court denied a hearing pursuant to 28 U.S.C. § 2255(b).

Nevertheless, as cited in the footnote supra, upon receipt of the court's denial of Section 2255 relief in the main-land, the trial of one Mike Miske was/is afoot to where, one WAYNE MILLER was then currently on the witness stand for the government as a witness against Mr. Miske. See— United States V. Michael Miske, et al., No. 19-cr-00099-DKW-KJM-1 (D. Haw.) (Week of February 9, 2024)

Therein, Wayne Miller made unequivocally clear, that he had a longstanding relationship with Attorney Thomas Otake. That Otake was retained from Mike Miske to inquire into Miller's personal criminal case to inquire whether or not he was a cooperator, and to otherwise influence his criminal proceedings. (DKT. # 664, Appx. # 8, at Attachment # 1)

P. 6

He further testified that, this was Miske's modus operandi, and he would regularly use Attorney Thomas Otake to infiltrate other's criminal cases and report to Miske himself. Miller testified that he considered Otake a " friend. " (id.)

Appellant learned this from a local Island reporter, who had published his in court observations of this testimony on his internet website/blog.

Instead of making for a Notice of Appeal to this Court of Appeals for the Ninth CIrcuit and Request for Certificate of Appealability under 28 U.S.C. §§ 2253(c)(2), and Fed. R. App. P. Rule 22(b)(2), Appellant made for a " Motion to Reconsider under Fed. R. Civ. P. 59(e). " (Doc. # 664)

As this testimony went directly to the integrity and the credibility of Otake's sworn statements in the government's response in the Section 2255 proceeding in the " off-the-record matter(s), " Appellant requested that the district court GRANT a reconsideration and hold a full-evidentiary hearing. (id. at 2, and 22) (Appendix # 8)

Due to the nature of the " newly discovered evidence " and the fact that the testimony in the Miske trial was ongoing, including the fact that Appellant could not obtain that evidence from the standpoint of imprisonment on the main-land, Appellant requested a subpoena of the Wayne Miller Testimony, and any other testimony that may ber pertinent to the claims before the district court under 2255. Furthermore, he sought discovery. Discovery as to if Attorney Thomas Otake was a professional asset to the U.S. Government, specifically AUSA Mark Inciong for the fact that he had falsified this testimony, and coupled with all of his activity in the criminal proceeding, including cajoling Appellant to cooperate, -

P. 7

... coerce Appellant to plead guilty to terms and conditions that he did not accept with " bait-and-switch styled negotiation tactics " with " erroneous legal advice " or none at all and upon securing this death certificate of a plea agreement, did abandon him in the 25th hour, why ? Why would he do such a thing ? Why would he falsify testimony to ensure that his relationships were hidden from the public.

Discovery was neccessary and proper.

While the request was pending, the time with which to make for this appeal was held in abeyance. However, on May 8, 2024, the district court denied the motion for reconsideration. (Doc. # 665)(Appx. # 8)

In the denial the court reviewed Appellant's " proffered evidence " to which it directed the attention to " the blog post discussing Miller's testimony in Miske's ongoing and unrelated criminal trial. " (id. at 6)

Astoundingly, the district court misconstrued the position, and the original claims in regards to the " conflict of interest " making factual conclusions that the Miller testimony did not contradict the sworn testimony in the 2255 proceeding. (id. at 7)

That, somehow this factual contest discovered by Appellant in regards to Otake's relationships did not create a conflict of interest in violation of the Sixth Amendment. (id. at 9)

The district court denied the motion.

Appellant filed a timely, Notice of Appeal and Request for Permission to Litigate a Certificate of Appealability under 28 U.S.C. § 2253(c)(2), and Federal Rules of Appellate Procedure Rule 22(b)(2). (Doc. # 666)

P. 8

On June 3, 2024 this U.S. Court of Appeals docketed the case and issued the Docket Number 24-3469. (Doc. # 667)(Appx. # 10)

Therewith, Appellant presents this " Substantial showing of the denial of a Constitutional Right(s) " under the standards set forth in 28 U.S.C. § 2253(c)(2), and Federal Rules of Appellate Procedure Rule 22(b)(2).

That Appellant did in fact make this " substantial showing " to the dsitrict court, and that, the district court did error, and otherwise abuse it's discretion in it's analysis denying relief under 28 U.S.C. § 2255.

Also, that Appellant did present evidence sufficient to call the district court to hold a hearing pursuant to 28 U.S.C. § 2255(b), and the district court did abuse it's discretion in denying to hold a hearing.

Appellant will make this presentment as to a substantial showing of the Sixth Amendment Right(s) to the effective assistance of counsel, " durring and throughout the ' pretrial, plea negotiations phase ' of the criminal prosecution, " and too at the sentencing process as a whole " and respectfully requests that this Honorable Court of Appeals for the Ninth Circuit, will issue a COA, and simueltaneously a REMAND for error, and abuse of discretion, for further review with instructions; OR, to hold a hearing that is clearly called for by the " record(s) and files of the case, under 28 U.S.C. §§ 2255(b) respectfully.

Appellant will make this presentment, hereinafter, respectfully to wit;

P. 9

## VI. LEGAL STANDARD:

### A. 28 U.S.C. § 2253(c):

In order for this Appellant to proceed before this Honorable Court of Appeals in review of the denial of his motion pursuant to 28 U.S.C. § 2255, he " must first obtain a certificate of appealability. " See 28 U.S.C. § 2253(c)(1): see also Fed. R. App. P. 22-1, and 2; see also United States V. Mikels, 236 F. 3d 550, 551-52 (9th Cir. 2001)

Under these statutory requirements, an Appellant " must make a ' substantial showing ' of the denial of a constitutional right '" to warrant a Certificate of Appeal ( " COA "). See 28 U.S.C. § 2253(c)(2); also Slack V, McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 146 L.Ed. 2d. 542 (2000).

The Appellant must also " demonstrate that reasonable jurists would find that the ' district courts assessment ' of the constitutional claims ' ' debatable or wrong. '" Slack 529 U.S. at 484; see also Miller-El V. Cockrell, 537 U.S. 322, 338, 123 S.Ct. 1029, 154 L.Ed. 2d. 931 (2003)

This collectively turns on whether this Honorable Court of Appeals finds that, " the questions presented are adequate to deserve encouragement to proceed further. " Barefoot V. Estelle 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed. 2d. 1090 (1983)

" A showing a [Petitioner] ' must make to be heard on appeal ' is less than that to obtain relief. " See Allen V. Ornoski, 435 F. 3d 946, 951 (9th Cir. 2006) This does not require a showing that the appeal will suceed. " Id. (quoting Silva V. Woodford, 279 F. 3d 825, 832 (9th Cir. 2002))

P. 10

**B. 28 U.S.C. § 2255:**

The judgment before this Court under the before mentioned under 28 U.S.C. § 2253(c)(2) is as to a presentment of the violation of the Sixth Amendment Right(s) guaranteed for the " [in]-effective assistance of counsel ' during plea negotiations, '" under 28 U.S.C. § 2255.

Section 2255 states in pertinent part:

" A prisoner under a sentence established by an Act of Congress claiming the right to be released on the ground that the sentence imposed is (1) ' in violation of the Constitution ' **or** ' laws of the United States... '" See 28 U.S.C. § 2255, see also United States V. Hayman, 342 U.S. 205, 207 n. 1, 72 S. Ct. 263, 96 L.ED 2d 232 (1952), United States V. Monreal, 301 F. 3d 1127, 1130 (9th Cir. 2002), United States V. Barron, 172 F. 3d 1153, 1157 (9th Cir. 1999), and Tripati V. Henman, 843 F. 2d 1160, 1162 (9th Cir. 1988)

The motion here on review was presented thereunder as to the Sixth Amendment right(s) guaranteed as Appellant states herein that, " [he] has made a ' substantial showing of the denial of a constitutional right " thereto and will make such hereinafter under the terms of Section 2253(c)(2) and the Federal Rules of Appellate Procedure 22(b)(2), he cites further that, the district court did commit error and otherwise abused it's discretion and that standard is solidified at:

**C. STANDARD OF REVIEW UNDER 28 U.S.C. § 2255:**

" A district court's decision in a § 2255 motion is reviewed ' de novo' and for ' clear error any factual findings.'" See Nunes V. Mueller, 350 F. 3d 1045, 1051 (9th Cir. 2003)

VII. **SUBSTANTIAL SHOWING OF THE DENIAL OF A CONSTITUTIONAL RIGHT TO THE SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL DURING AND THROUGHOUT THE " PRETRIAL,' PLEA NEGOTIATIONS PROCESS ' AS A WHOLE, 'INCLUDING THE SENTENCING PHASE OF THE CRIMINAL ACTION: '"**

(i). **APPEAL TO A PROCEEDING PURSUANT TO 28 U.S.C. § 2255:**

As cited, this presentment is an appeal to a proceeding pursuant to 28 U.S.C. § 2255, and the failure to hold a hearing called for by the facts and circumstances embeded therein.

That, this appeal, primarily makes a " substantial showing of the denial of right(s) guaranteed to the Sixth Amendment Right to the effective assistance of counsel, " during and throughout the pretrial, ' plea negotiations process, '" that lead to the acceptance of a written plea agreement, that Appellant did not knowingly and intelligently accept. See United States V. Cosme Rodriguez 49 F.4th 1205 (9th Cir. 2022)(quoting United States V. Rodriguez-Vega, 797 F. 3d 781, 788 (9th Cir. 2015) Also, the right to the " effective assistance of counsel through the sentencing phase the same.

As to the numerous factual contestations of fact, the district court should have held a hearing pursuant to 28 U.S.C. § 2255. As the underlying judgment comes before this Honorable Court for review, Appellant will present the claims that, the district court commited error, and otherwise abused it's discretion in the 2255 proceeding and this appeal follows:

1. **The District Court Committed Error and otherwise abused it's Discretion in Denying relief in the Proceeding pursuant to 28 U.S.C. § 2255:**

(ii) **2255 JUDGMENT HERE ON REVIEW:**

a. Counsel Gave ineffective advice during the plea negotiation's phase in regards to a threat of a " statutory mandatory life sentence " per the application of an enhancement under 21 U.S.C. § 851:

The district court acknowledged in it's review of what it parsed as " Claim # 1, that many of the matter was raised and denied in this withdraw process. (Doc. # 661, at pg. 11) This without considering the full factual matter of Appellant's assertions of the " off-the-record occurences " and the fact that, he too asserts that he did not effectively communicate with the then Attorney Kawata in that process. (id. Doc. # 656-2, at 10, ¶ 56) (" Declarant was unable to obtain an appointment until on or about May 11, 2021, at which time, ' [he] obtained a **signature on the signature page,**' which had been tailored to meet with revisions made to comply with changes done with Mr. Wilcox.'") This was contrary to an earlier assertion where he stated, " Declarant conducted a thorough investigation of the vent's leading up to Wilcox's signing of the plea agreement based on multiple, ' at least eight in-person meetings with Wilcox, ' and more likely in excess of 12. '" (id. at 4, ¶ 18)

The district court acknowledged Appellant's claim that he was coerced via the threat of a " statutory mandatory minimum life sentence " per the an egrgious enhancement under the then, " pre-First Step Act version " of 21 U.S.C. §§ 841(b)(1)(A), and 851. (id. Doc. # 661, at 12) The court disregards this contention by stating that, " ... the First Step Act had not yet been signed into law. " (id. at 13)

This wholly misses the Appellant's claim that he was placed under durress and coercion regarding these matters from the inception and this took away his " knowing and intelligent decision making this in this process. " In making the demonstration Appellant presented a district court

P. 13

... court decision from a " well-renowned District Court Judge John Gleeson, " from the United States District for the Eastern District of New York in <u>United States V. Kupa</u>, 976 F. Supp. 2d 417 (E.D.N.Y. 2013)(id. Doc. # 646, at 24)

The Judge delineated a virtually identical situated, matter of factly the use of the threat to apply such an enhancement to " coerce guilty pleas, ' and ' cooperation ' is so severe that ' it takes your breath away.'" <u>id</u> 976 F. Supp. 2d at 419.      That, it is the equivallent of bringing an " 800 pound guerilla into the room " during plea negotiations. 976 F. Supp. 2d at 459.

Judge Gleeson acknowledged the then U.S. Attorney General Eric Holder Policy concerning the use of such known as the " Holder Policy. " <u>id</u> 976-F. Supp. 2d 430, n. 53 (" Memorandum from Eric. H. Holder, Jr. Att'y Gen. of the United States to All Federal Prosecutors, Department Policy on Sentencing ( May 19, 2010))

Like this understanding, the proffer agreement, a contract was offered and accepted via these very threats, and could not be considered sound decision making. <u>See</u> <u>United States V. LaFuente</u>, 8 F. 3d 1333, 1337-38 (9th Cir. 1993), see also <u>United States V. Crow</u>, 651 Fed. Appx. 686, 688 (9th Cir. 2016). Moreover, upon entering this " agreement, " it was made with specific provisions, that subsequently the government made desperate attempts to break throughout with still the same threat of the " statutory mandatory life sentence, " under Section 851. This including into November of 2018, one month before the passage of the Act.

Otake did not once advise that the FSA had passed, and as Appellant was still in the cooperation process, and pre-plea offer, the FSA -

P. 14

... substantively changed this portion of the prosecution, and the life sentence no longer applied. See Pub. L. No. 115-391, § 401(a)(2), 132 Stat. at 5220-21.    Otake however, factually continued to allow the placement of the 851 upon the ledger throught he passage of the FSA, for it was embedded in the plain language of the plea agreement as an element and offer of exchange 9 months later.

Otake rendered " ineffective assistance of Counsel during the ' pre-trial plea negotiations phase of the plea process, " i.e., cooperation that resulted in an agreement that Appellant did not knowingly and intelligently accept. See United States V. Leonti 326 F. 3d 1111 (9th Cir. 2003) This was detailed in the 2255 prsentment.

The government presented Otake's sworn delcaration that claimed that it was Appellant who asked Otake to begin speaking with the government. (id. Doc. # 656-1,pg. 4, ¶ 6-7) He states further, that in preparation for his cooperation, " [I] met with Wilcox on multiple occasions. ' [I] explain -ed the pros and cons of cooperation, ' but I did not presure Wilcox for any particular decision. " (id.) This is inaccurate.  The record itself presented by Appellant in the motion for collateral relief in his sworn affidavit, was supported by the original DEA-6 rept. (id. at EXH. # 1) This evidence demonstes, that it was AUSA Inciong, the DEA and the FBI who made the threatening attempts to speak with Appellant via a life sentence if he did not cooperate. (id.) Further, Otake did not explain what he adv-ised in preparation for this cooperation, as he claimed to have met on " multiple occasions. " This factual dispute should have called a hearing. See United States V. Burrows, 872 F. 2d 915, 917 (9th Cir. 1989) The district court errored and this is a substantial showing of the denial of the the Sixth Amendment right. See 28 U.S.C. § 2253(c)(2).

P. 15

The government and the district court have still failed to explain, why it was that, 9 months after the passage of the First Step Act, that legally invalidated any application of the " statutory mandatory life sentence ' that Appellant was placed under from the inception of the prosecution of this Appellant. '" Including the arrest, and subsequent interrogation process leading into the proffer agreement, and thereafter, the plea agreement itself, squarely, " the plea negotiation process as a whole. " See Lafler V. Cooper 132 S.Ct. 1376,1388, 182 L.Ed. 2d 398 (2012), Missouri V. Frye, 132 S.Ct. 1399,1407, 182 L.Ed. 2d 379 (2012), Johnson V. Uribe 682 F. 3d 1238, 1243 (9th Cir. 2012), and Miles V. Martel, 696 F. 3d 889 (9th Cir. 2012)

Factually, nine (9) months after the passage of the FSA, the government presented as an element of exchange in the plain language of the plea agreement. This is acknowledged by the district court in the 2255 denial right after the review. (see id. at 15, n. 5)

What did Otake explain to Appellant in his advice ? As he claims that, " [He] was well aware of the First Step Act prior to pleading guilty, both from my discussions from him, and from his own research in the law. " (id. at pg. 14, citing Govt's Resp, at 656-1, Otake decl. at 8-9)

Further, " obviously it was a huge developement in the Federal criminal justice system, and to claim that I would not have known about it, or that [ Ka'anoi] did not know about it, is ridiculous. '"

As this is pure speculation in regards to what Appellant knew or did not know while he was in pretrial incarceration, why did he allow for the plea agreement to contain such a concession ?

P. 16

The Court acknowledged the " plea agreement " issue as presented in terms of the advice Appellant received that continued from plea negotiations phase. (id. Doc. # 661, at 13)

It went further, to examine the claim in unison with the factual presentment that " [he] was not informed of this change of law as he sat in pretrial custody. " (id. at 14, citing 2255 Mot. at Doc. # 646, at 27) It continues this acknowledgment, of the totality of Appellant's factual assertions in concern to the ultimate presentment of the plea agreement, that Otake lead [Petitioner] to believe that he was still under the yoke of the life sentence, , ' and that the plea agreement would avail him of such. '" (id.)  It also inherits the claims facts that, ultimately claim that, " Otake's failure to inform him ' deprived him of his right to make an informed and willing plea decision, ' and that he otherwise would not have accepted the terms of the plea agreement. " (id.)

The district court made credibility conclusion " stating, " Such assertions, however, are not credible. " It does so by first stating that, " Otake categorically denied Ka'anoi's claims, detailing his factual assertions in his sworn declarations..." (Citing DKT. # 656-1, at 8-9)

What is perplexing in the district court's analysis of this claim is that, it states thereafter, that, " Moreover, beyond Otake's representations, [Ka'anoi's] claims are also inconsistent with the record. ' Not only did his plea agreement explain that the Government agreed to withdraw the Section 851 Special Information, which had formerly provided a basis for the mandatory minimum life sentence ..." (id. 14, and 15.)

This position not only misconstrues the claim but is " double speak."

P. 17

Either the FSA was discussed or it was not. If it was discussed, when, and what was discussed about it ? The claim is that counselman was ineffective durring and throughout the " pretrial, plea negotiations process as a whole. " If the statutory mandatory minimum was already changed from the basic function of the FSA, then certainly it would not have been embedded as a element of exchange in plain language of the plea agreement, which it was, nine months after the passage of the Act. Appellant claims, that counselman should have known and adequately advised him in this process, by the black letter of the plea agreement he did not. Counsel was ineffective for failure to do such. See Nunes V. V. G.A. Mueller 350 F. 3d 1045, 1053 (9th Cir. 2003), see also Miles V. Martel, 696 F. 3d 889, 903 (9th Cir. 2012)(quoting McMann V. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed. 2d 763 (1970))

These are off-the-record matters that took place that if the district court believed that there was a conflict in sworn testimony it should have held a hearing to make a determination based on the evidence and facts. See United States V. Chacon-Palomares, 208 F. 3d 1157, 1159 (9th Cir. 2000), also Machibroda V. United States, 368 U.S. 487, 494, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962)

The district court also deferred to the record, i.e., the " plea colloquy " as to determine that Appellant's post hoc statements in this 2255 proceeding are incredible. (id. Doc. # 661, at 15-16, citing United States V. Ross, 511 F.3d 1233, 1236,-37 (9th Cir. 2008)) And that " ...[he] was clearly aware that he ' no longer faced a life sentence at the time he entered his plea...'" (id.)

P. 18

Again, this " at the time of the entry of ' the plea...'" is not the claim. It's the " acceptance of the plea agreement, and the plain language of the plea agreement itself, i.e., " inducement. "    Appellant gave clear factual assertions that essentially " filled in the blanks " what occurred during this process leading into the plea in sworn testimony, that is factually supported by the record itself. Otake claimed otherwise which is refuted by the record. To give this " credibility analysis " against this presentment without at least a hearing is in error. See Earp V. Ornoski,- 431 F. 3d 1058 (9th Cir. 2005)(quoting Blackledge V. Allison, 431 U.S. 63, 82 n. 25, 52 L.Ed. 2d 136, 97 S.Ct. 1621 (1977)(" When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive "))

Here, this Attorney Thomas Otake did not in fact adequately explain the law and the facts neccessary to make a concientious decision in the " plea negotiations process as a whole, or did not give him the " tools neccessary to make these decisions respectfully. '" Appellant's right(s) to the effective aassistance of counsel have been violated, the district court's decision denying relief is in error.   Appellant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

This Honorable Court of Appeals, should issue a COA, and issue a remand to vacate, set aside or correct, OR, order a hearing pursuant to 28 U.S.C. § 2255, respectfully.

### b. Counsel did not Adequately Communicate with Appellant;

The district court continued to review and examine the claim(s) before it, parsing a " Ground 2: ' Communication '" issue. (id. Doc. # 661, at 17) This claim was presented as argument of the Sixth Amendment violation under the " Totality of the Circumstances " in the " pretrial, plea negotiations phase '" that lead to Appellant's Acceptance of the plea agreement respectively. See Melton V. D.W. Neven, 712 Fed. Appx. 610, 611 (9th Cir. 2017), see also Hayes V. Woodford, 301 F. 3d 1054, 1070 (9th Cir. 2002)(Citing Strickland V. Washington, 466 U.S. at 695), and Doe V. Woodford 508 F. 3d 563, 569 (9th Cir. 2007)

It recognizes the factual basis as presented by Appellant that delineated the communication, or the quality or lack thereof through this pretrial process leading into the acceptance of the plea agreement. (id)

However, it then directed the attention to the previous order denying the withdraw motion, and stated, the assertions are " .. not credible. " (id.) However, and again, this was a withdraw proceeding and regarded matters of the record. Further, that appellant never had an opportunity to review the content of the sworn declaration that was presented on his behalf as he was brought a mere " signature page " to endorse. Here, Appellant has supplemented these facts, coupled with the original and the record as a whole to present " detailed factual matter ' in sworn testimony ' that gives the court a more indepth view of what took place in terms of communication leading into the acceptance. see id. Chacon-Palomares, 208 F. 3d. at 1159.   As noted supra, this credibility determination was done without a hearing and should have been heard anew.   Otake's conjectured statement without any evidence, i.e., visitation logs and the like are not credible under the totality of these circumstances.

P. 20

In terms of examining on the record at the colloquy of what Appellant was satisfied with, or not, at that time, Appellant beleived that he was in good standing and was going to receive the benefit of the bargain that he had negotiated through the coercive measures leading up and until the acceptance of the agreement.  Otake's entire focus was " waive all of your rights, cooperate with the government to investigate others, and plead guilty. "   (Appx. # 3, pg.'s 5-6 )

Do this because you are facing a statutory mandatory life sentence under 21 U.S.C. § 851.  (id. at 6, ¶ 50)

Upon securing the initial proffer agreement, he took pains to convince Appellant to break the agreement and engage in activity that was against the clear and unambiguous language of the cooperation agreement. (id. ¶ 51)

All this while Appellant begged for the discovery in the case, and to have his defense, which he did not achieve.  (id. ¶ 52)

This was the extent of Otake's visitation during and throughout the course of the " plea negotiations phase of the criminal prosecution " leading into the acceptance of the plea agreement.  This credibility analysis is inconceivable and unsound.  The district court should have held a hearing. see id. Earp, supra, 431 F. 3d 1058 (Citing Blackledge)

Moreover, the facts and allegations should have been read under the totality of Otake's actions and omissions, not merely in the individualized context as here the district court made. The district court commited error in this analysis, and otherwise abused it's discretion, this court should issue a remand. Nevertheless, Appellant has made a substantial showing of the denial of a constitutional right. See Doe V. Woodford, supra, 508 F. 3d at 569.

P. 21

c. Counsel did obtain Discovery necessary to make a Decision;

Also, in the context of the overall representation throughout the plea negotiations phase of the prosecution, during and throughout these times that Appellant was making attempts to defend against certain accusations and facts in the case in regards to purported evidence of drug dealing in the year of 2016 that he vehemently objected to during the entire course of the prosecution. In it's decision in review the district court recognized that Appellant was searching for the puported " wire recording's " in the case entirety. This that Appellant claimed would show that he was essentially " telling the truth. " Furthermore, upon the presentment of the plea agreement itself, Appellant in fact objected to these very assertions in the factual basis of the four corners of the documentation. The evidence, and discovery was a linchpin of the government's case-in-chief against Appellant and he could not make an " intelligent decision " in deciding whether to accept the terms of such, which he actually did not. (See Doc. # 661, at 19)

Appellant presented a district court decision in the Circuit to demonstrate the essence of the claim. See United States V. Baptista No. CR 10-0050 PJH, 2011 U.S. Dist. LEXIS 22300, at * 11-12 (N.D. Cal. February 23, 2011)(quoting Turner V. Calderon, 281 F. 3d 851, 881 (9th Cir. 2002))

Again, the district court relied on Otake's conjectured statements to which are too double speak. (id. at 19) " [Ka'anoi] asserts that he had been in possession of these recordsings ..." (id.) Otake does not recolect whether the specific CD's with audio/video evidence was mailed to [Ka'anoi] in this case..." (id.) However, he states " ..he does recall listening to the audio/video evidence with [Ka'anoi] ' repeatedly ' during his visits with him at FDC. (id. at 20, citing DKT. # 656-1 at 3)

P. 22

There is absolutely no evidence presented by Otake, and the government to support this contention for the district court to make such a finding. Certainly, the government has access to the visitation logs from the FDC, moreover, if a technological device was introduced into the facility, there would be some sort of record. Again, simply taking Otake's position in controvention to Appellant's sworn testimony is erroneous.

Even more vexing is the district court states that somehow, "[Ka'anoi] provides little explanation of what information is contained in the CD's that would have affected his decision to into into [a] plea agreement. (id. at 20) "

Appellant clearly claimed that this material, i.e., the CD's/audio potentially contained evidence that he did not in fact have any dealings with controlled susbatnces with the named codefendants in the case in the year of 2016. (id. Doc. # 8, and 344, at pg.'s 8-9., also 2255 Mot at 8, 10

This evidence would have supported his arguments and positions before the prosecution in the " plea negotiations phase of the criminal action." See United States V. McTiernan 546 F. 3d 1160 (9th Cir. 2008)

As a matter of fact, these facts were embedded in the Indictment and the plain language of the plea agreement, that Appellant complains that he contested to the level that he would not accept unless it was removed, and that Attorney Otake told him it was removed.

He clearly claimed in the 2255 that " had Appellant had these ' tools' he could have assessed the content of the wire recordings and explained for the government and whoever else that the contents of such were/are misrepresented concerning the ' ten pounds ' that the government claimed -

P. 23

... Appellant directed ' Shane Kaui to an unnamed individual. Furthermore, what Appellant continuously sought to explain... ' (id. 2255 mot. at 37)

The District court should have held a hearing;

Appellant certainly made material explanations in this matter that are clearly within the right of a defendant facing a life sentence to review to make this knowing and intelligent choice that Appellant did not receive, and Otake did not make the request. Otake was ineffective to a Sixth Amendment degree. See id. Baptista, 2011 U.S. Dist. at * 27.[2]

The district court commited error in this reasoning, and otherwise abused it's discretion. Counselman was either confused as to whether he made sure Appellant received this information, and provided conflicting facts in regards to his bringing the audio upon visiting. The district court should have held a hearing in this matter under 28 U.S.C. § 2255(b), and called for the production a the " visitation logs, " from the FDC Hawai'i respectfully.

Based on the claims before the court under the totality of the circumstances, Appellant has a substantial showing of the denial of a constitutional right, and this Honorable Court of Appeals should issue a remand, respectfully. See 28 U.S.C. § 2253(c)(2).

---

n. 2: This claim is in direct line with the rejection of the plea agreement language that remained in the body of such and was later proved as a letter received from another government source that supported Appellant's position that he did not have any dealings in 2016.

P. 24

The district court heard the claim of the factual stipulations were contested in the order denying relief. Id. Doc. # 661, at 21) It acknowledged that Appellant claimed that, " Otake assured Appellant that he would ' have AUSA Inciong remove such. '" (id. citing DKT. # 646, at 20) Also, that " [he] only discovered at the change of plea hearing that ' Otake failed to do so. '" (id.)  However, the district court misrepresented the content of the claim, where it states, " ... [he] would not have ' **plea guilty** ' had he known before hand. " (id. citing DKT. # 646, at 20, 31, 32, 58 , and DKT. # 647 at 27)

This wholly misrepresents the record and the claim itself. For example, the record in the 2255 at DKT. # 646, pg. 20, Appellant stated, " that he believed that these elements of fact would be removed. (i.e., evidenced by the blue pencil exclusion in the evidence in the withdraw proceeding " written plea agreement "id.)

At pg. 31, the assertion was, " ... as to these factual elements in the ' plea agreement ' Appellant did not knowingly and intelligently accept the terms of the plea agreement... '" (id.)   Again, at pg. 58, " had Appellant known that these would be changed, Appellant would not have **endorsed the contract.** '" (id.)

Nothing in the 2255 motion in regards to this matter stated that he would not have " plead guilty, " he would not have accepted the plea agreement and instead would have rejected the contract entirely. This is the " advice " Appellant received in the plea negotiations process, that Appellant received in-effective assistance of counsel in violation of the Sixth Amendment that lead to an agreement that he did not knowingly and -

... intelligently accept. (id. Doc. # 646, at 29-35)

This under clearly established contract law principles. (id.) See United States V. Transfiguration, 442 F. 3d 1222, 1228 (9th Cir. 2006)

The district court simply deferred to the decision in the withdraw proceeding that, " [t]here is simply no ineffective assistance of counsel as [Ka'anoi's] methamphetamine responsibility is concerned. (id. Doc. # 661, at 22, citing DKT. # 566, at 16) " Nor was Otake ineffective with respect to any of the other ' **factual stipulations** ' that [Ka'anoi] now disputes. " (id.) It then cited to Otake's sworn declaration in the Section 2255 Resp. from the government where he states:

> " I discussed the plea agreement with [Ka'anoi] on ' multiple visits prior to his change of plea hearing. ' Based on our discussion, I tried to get revisions made to the proposed plea agreement. ' The government ' agreed to some of the revisions ' [Ka'anoi] **requested** and others they did not. Prior to the change of plea hearing, I clearly communicated to [Ka'anoi] which changes the government had agreed to make to the plea agreement. I also reminded him that any stipulations as to drug amounts agreed to by the parties were not binding on the Court. Based on out discussions, ' I believe that [Ka'anoi] understood the entire agreement and was ready to change his plea. "

(id. citing DKT. # 656-1, at 6)

Here Otake makes unambiguously clear that " Appellant requested revisions during and throughout the offer of the plea. It also makes clear that, Otake agreed to make these objections known to the government. The only conflict in the factual testimony, is that, Otake claims that the government agreed to some of the revisions and some they did not. (id.) Furthermore, Otake claims that he explained to Appellant was reminded that these stipulations as to drug amounts were not binding on the Court. Also " he believed that ... Appellant understood the entire agreement and was ready to change the plea. (id.)

P. 26

That is simply misrepresented. What these facts demonstrate is that understood that there was a factual rejection of material aspects of the plea agreement, and was ready to " accept the terms of such, ' **if they were augmented.'**" And yes, under the augmented terms, he was ready to change the plea.   He believed, " based on Otake's advice, ' that he would have the terms amended " that he was in good faith with the government. The material contestation here, is that, Appellant rejected the terms of the plea and would not accept the plea absent augmentation, ' and Otake's conclusory statement(s), " ... the government agreed to some of the revisions and others they did not. ' Prior to the change of plea hearing, 'I clearly communicated to [Ka'anoi] which changes the government had agreed to make to the plea agreement. '" (id. Doc. # 656-1, at 6)

Otake does not identify which ones there were and what he told Appellant in regards to these changes. This broad sweeping language does nothing to validly controvert Appellants specific facts in regards to his rejection to any language in the agreement that cited any activity in 2016, and that, " at [Wilcox's] direction, Kaui began supplying, ...'" (See Doc. # 647, at pg. 10, see also DKT. # 344, at pg. 7 )

This was identified originally in the withdraw proceeding, and now in this Section 2255 proceeding Otake gives this bald and conclusory statement that does not identify any factual advice that was given to Appellant in making the determination whether to accept or reject the presentment of a written plea agreement. The district Court should have held a hearing in this matter, and called forth Otake to explain what he told Appellant, and if he did not why ? See Miles V. Martel 696 F. 3d 989, n. 5 (9th Cir. 2012)(Citing Hill, 474 U.S. at 56-58)

P. 27

This 9th Circuit has long held, " Durring all critical stages of the prosecution, ' which must include the plea bargaining process, ' it is counsel's duty to consult with the defendant on importatnt decisions in the prosecution, ' those obligations ensure that ' the ultimate authority remains with the defendant ' to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury ... [ect].'" id. Nunes V. G.A. Mueller, 350 F. 3d 1045, 1053 (9th Cir. 2003)(quoting Strickland V. Washington, 466 U.S. at 688))

In doing so, the law is clear, that " Counsel ' **must advise** ' the Appellant candidly, and competently, and give the Appellant the ' tools necessary with which to make an informed decision. '" See Turner V. Calderon 281 F. 3d 851, 880 (9th Cir. 2002)(Citing United States V. Day, 969 F. 2d 39, 43 (3d Cir. 1992)), see also ABA Standards For Criminal Justice, Prosecution and Defense Function 4-4(a)(3d. ed. 1993))

Here Appellant rejected the plea agreement absent change to the material facts therein, Otake represented to Appellant that he was able and did secure the government's agreement, and the plea agreement would not contain these facts. At the plea colloquy, Appellant heard these matters read and upon disagreement Appellant was told to simply read from a card so that, the plea would be entered and Appellant would receive the bang for his buck.

He did not receive this bang, and only gave his buck. This is an unconscionable agreement, that is a " bait-and-swicth " and thus, is not a knowing and intelligent waiver of his rights, nor acceptance of the plea offered plea. This district court errored in it's 2255 analysis, and otherwise abused it's discretion. It should have held a hearing under Section 2255(b). id. Chacon-Palomares, 208 F. 3d at 1159.

Here and again, the district court states, that, " ...[if] Ka'anoi objected to any of the factual stipulations in the plea agreement ... ' he had several opportunities to raise that matter during the plea colloquy. '" (Doc. # 661, at 23) " Instead he affirmed over and over-that he both understood the factual stipulations in the plea agreement and agreed to them. (id. citing n. 7)    The district court acknowledged the fact that Appellant did in fact make known that he was given a " prefabricated card to read from in the colloquy. " (id. at n. 7, citing Doc. #'s 646 at 20, and Doc. # 647 at 27, and DKT. # 657-1 at 13) It then noted that the matter was " disputed by Otake " in the government response at Doc. # 656-1 at 6-7. (id. Doc. # 661, at 23, n. 7)  It noted, however, that this contention lacked credibility. (id. at n. 7) However, The plain language of the statement from Otake outright admitted giving Appellant a " prefabriacted card to read from. " (id. " I provided [Ka'anoi] with ' one short paragraph of suggested language to help [Ka'anoi] answer when the court asked him to ' tell me in your own words why you believe that you are guilty, ...'" )  Directly thereafter, Otake stated, " ... I did not provide him a script instructing him how to answer any of the court's other questions, ..." (id.)   Otake did not come forward with a copy of this script, but, here and again is double speak ! On the one hand he did provide a script and on the other hand he did not. The court made a " credibility determination " against Appellants assertions that he did ? This decision is in error and this Court should remand. This for a hearing to either produce this " prefabricated card " or to reexamine the claim in Appellant's favor that he was mislead in the plea colloquy, respectively.

P. 29

The district court continued in this matter as parsing this Sixth Amendment claim of the violation of the Sixth Amendment right to the effective assistance of counsel durring and throughout the pre-trial plea negotiations process " as a whole " by identifying the assertion that Otake mis represented the " probable sentence. " (id. Doc. # 661, at 24)

The court accepted the whole of Appellant's assertions in this matter, in stating, " According to [Ka'anoi], Otake explicity advised him ' as the result of his cooperation " during the proffer sessions, there was a great chance that he would receive a substantial departure from his sentencing ... to a 7-10 year sentence. ' (id. at 24, citing DKT. # 647 at 25-26) As to such, Ka'anoi claims that had he known that could receive a substantially higher sentence, he would not have plead guilty and would have insisted on proceeding to trial. " (id. citing DKT. # 646 at 60-61)

As Otake again contested these matters as to the run-of-the-mill defense to these types of claims , including the government's attorney, AUSA Inciong in it's response, at Doc. # 656, at 20, and 656-1, at 7, this was a focal point of the withdraw proceeding as well. However, and again, the court, nor the record as whole have the opportunity of Appellant's sworn testimony explaining what was represented to him in the negotiations process leading into this element of factual content. As asserted, not only did the government factually threaten Appellant with the statutory mandatory life sentence, but also the plain language of the plea agreement the same offered the opportunity for a cooperation credit under 18 U.S.C. §§ 3553(e), Fed. R. Crim. P. 35(b), and USSG § 5K1.1. (id. DKT. # 344, at

d. Cooperation was induced and was induced as a " bait-and-switch: "

At the outset, Section 3553(e) does avail a defendant of a " mandatory minimum sentence, i.e., the 10 year minimum-mandatory under 21 U.S.C. § 841(b)(1)(A) (" 10-life "), and Rule 35(b) the same, including USSG § 5K1, " up to 50% of the calculated Guidelines sentence under the USSG's.

The government, including Otake, and the court has repeatedly directed the attention to the calculated guidelines range under the USSG's as accounted to Appellant. (id. Doc. # 656 at 20, " TOL 35, CHHC III=" 210-262 months. (id., see also Doc. # 661 at 25)   What this does not account for, is what Appellant was advised thereafter for his " cooperation consideration." What would %50 off be after the application of the USSG § 5K1.1 departure ? 210 months, " halved ? " 105 months ! This is well within the range of 7-10 years. What about a Rule 35(b) motion after sentencing ? Up to 50 % of the already established sentence. (7-10 years) And ultimately, a statutory 3553(e) departure " below the statutory minumum of 10 years " i.e., 7-10 years.

Now, the district court states that, " to reach such a sentence would have required a departure of up to 10 levels from Otake's calculations " (that he claimed he advised) " something the court finds unlikely. " (id. Doc. # 661, at 25) It does so by again stating, " .. .particularly given Ka'anoi's admitted reluctance to fully cooperate with the government. (id. citing DKT. # 646 at 17-19, DKT. # 647 at 24) Accordingly the court does not find that Otake engaged in the type of " gross mischaracterization " required to show ineffective assistance in this regard. (id.)

Principally, Appellant directs the attention yet again, to the government, and now the courts distaste for the plain language of the proffer agreement where all parties agreed that " one person " would not be a part of his cooperative efforts. (id. Doc. # 656 at 2, citing ECF No. 515 at 2)

P. 31

Here the preponderance of the evidence demonstrates that, counselman, and the government " grossly mischaracterized " the likely sentence as the result of the settlement of Appellant's case, and this is in violation of the Sixth Amendment Rights to the effective assistance of counsel. See Iaea V. Sunn, 800 F. 2d 861, 865 (9th Cir. 1986 )

Appellant was cajoled into a cooperation agreement with the government via ineffective assistance of counsel. Further, threats, durress and coercion. Upon entry into that agreement there was a specific clause that disassociated one person. He engaged in a battery of cooperative efforts and did " substantially assist the government " in those endeavors. He did so with the belief that he would be eligible for a " substantially lower sentence " than he would otherwise be the subject in the long run. Thereafter, the government, including his own attorney painstakenly attempted to breach the plain terms of the agreement, and made use of the consideration, i.e., departure that was available to extort him into such. However, when Appellant simply requested to maintain the plain and unambiguous terms of the contract he was then dropped off like a garbage bag and left on the side of the road. The district court made clear that it was penalizing Appellant for failure to do so. Furthermore, Appellant continuously objected to accepting any responsibility for any activity in 2016. This as to language in the written plea agreement. The district court takes this as somehow balking in his cooperative efforts.

Nevertheless, the district court's analysis is out of line with the true facts and presentment before it in the " record and files of the case" and is in error. Appellant claims ultimately, that Attonrney Otake

P. 32

... was hired by a third party (names disclosed) to whom has a modus operandi of infirtrating other criminal cases to be intricately involved and otherwise influence the outcome. This Attorney, cajoled Appellant to cooperate or he would receive a statutory life sentence. Moreover, doing so believing that he would be ultimately compensated in exchange. Upon doing so, he was later presented with the plea agreement to where Otake lead Appellant to believe that he would receive a 7-10 year sentence in the end. After, the plea process took place and Appellant was duped into this agreement by Otake and the prosecution, the PSR was revealed, including the offer of a " 1-level departure " under USSG § 5K1.1 in exchnage for his efforts. (See DKT. # 515, and PSR )

As Appellant was essentially locked into this bait-and-switch plea agreement, Otake then attempted along with the AUSA Inciong to breach the proffer agreement yet again. This as to the now calculated guidelines sentencing range of 360-life imprisonment. When Appellant again refused to breach the agreement, counselman, along with AUSA Inciong formulated a pretext to where another person that Otake represented was injected into the cooperative effort, and to which Otake counseled to go ahead and cooperate againt. Upon Appellant's inquiry asto why he wished to create a conflict of interest, Otake counseled that this would not. Appellant began. Upon termination of his efforts, Otake motioned to withdraw as to a " conflict of inetrest. " He thus, abandoned Appellant in the 25th hour with a cooperation and plea agreement that he did not knowingly and intelligently agree. This violated the Sixth Amendment right to the -

... to the " effective assistance of counsel ' during the plea agreement process as a whole, '" this including the cooperative endeavors. See United States V. Leonti, 326 F. 3d 1111 (9th Cir. 2003) This where Appellant was misrepresented throughout the entire process, even to the level of a likely sentence. This was a gross misrepresentation. As to the factual analysis, the Court should have held a hearing and called forth, A. the DEA, and the FBI Agents, including the AUSA Inciong, the prosecutor who made these representations in unison with Mr. Otake to determine what was represented to Appellant, other than the DEA-6 report which clearly demonstrates the threats of the " statutory mandatory life sentence " as a element of the interrogation and plea negotiation phase, respectfully.

To simply say, that there was no " gross misrepresentation " without these individuals to veryify was erroneous. Moreover as in line with the entirety of the Sixth Amendment claim, that under the " totality of the circumstances " had he been adequately advised, he would not have entered any cooperation agreement, and would not have accepted the terms of the agreement, and would have insisted on proceeding to trial or negotiated a better plea. See Doe V. Woodford, 508 F. 3d 563, 569 (9th Cir. 2007)(Citing Iaea V. Sunn, 800 F. 2d 861, 866 (9th Cir. 1986))

The factual matter was presented outside the record, and should have been cooberated via a hearing under 28 U.S.C. § 2255(b), failure to do so was an abuse of discretion. id. Chacon-Palomares, supra.

Appellant has made a " substantial showing of the denial of a constitutional right, respectively. See 28 U.S.C. § 2253(c)(2), and this Court of Appeals should issuea remand.

P. 34

This was a part of a contract. This contract was made in the face of a constant threat to a statutory mandatory life sentence. Upon entry into these cooperative efforts Attorney Otake, including the government made clear that if this endeavor would be entered into, " absent this person " which is evidenced per the plain langauge of the proffer agreement, Appellant would receive the benefit of his efforts. Never did the government nor Attorney Otake lead Appellant to believe that he would receive anything more, and had they did, he would have never folded his hand, including his Constitutional right(s) onto the table.

Furthermore, never did he believe that he would have a calculated 360 month to life guidelines sentence on the ledger, and ultimately receive 24 1/2 years in prison, for cooperating with the government, and pleading guilty. Had Appellant had an inkling of something even close, he would have instead insisted on proceeding to trial by jury, or negotiating a better plea. See United States V. Rodriguez, 49 F. 4th 1205 (9th Cir. 2022)(quoting United States V. Rodriguez-Vega, 797 F. 3d 781, 788 (9th Cir. 2015))

It is inconcievable based on the plain language of the proffer, the plain language of the plea agreement, and the elements in exchange therein per cooperative efforts that Appellant would have accepted such a foolish endeavor. Matter of fact, if the Three (3) prior convictions were still relevant there would be a " 25 year mandatory minimum sentence " on the table. These were removed per the " plea agreement, " and certainly per the law which made 10-life and yes did expose the life sentence in any event. Nevertheless, upon a plea with the government received 6 months less ? This position is wholly incredible and this Court of Appeals should remand.

f. The district court errored in it's review of Appellant's claims of a " Conflict of Interest: "

As to Appellant's Sixth Amendment claims in unison, he claimed that counsel labored under a " conflict of interest. " (Doc. #'s 646, 647, at 29, & 647-1, at 14)  The district court acknowledged this claim in it's order, and did error and otherwise abuse it's discretion in it's analysis. (Appx. #-7, pg. 27)

Collectively, as asserted, Attorney Otake was in fact retained for representation, by a third party, one WAYNE MILLER. Immediately, Otake, over Appellant's cries to defend against the accusations and posecution, did make attempts to persuade him only to cooperate with the government and plead guilty. (Appx. # 3, at 5-7)

Appellant, thereafter, complained continuously  that any attempts to obtain the protection of a defense, including the recovery of discovery, to include wire recordings that would suppot his position of defense.

Nevertheless, the cooperative endeavors were entered into as asserted with the AUSA and company at counsel's advice. Afte the line of facts that took place through the plea agreement, that Appellant did not knowingly and intelligently accept, Appellant represented by Otake met with Inciong to where they made desperate attempts to persuade Appellant to breach the proffer agreement. Once these realized that Appellant would not breach this agreement, they formulated a pretext inquiring into one Wayne Miller, and his benefactor Michael Miske. Appellant sought Otake's advice in the matter for these two " were Otake's associates and personel friends. " (id. at 14)

P. 36

Otake explicitly advised Appellant to go ahead and cooperate with AUSA Inciong in regards to a line of questioning as to Wayen Miller and Michael Miske. Upon heading to this directive, subsequent to the interview, Otake withdrawed from the case for a " conflict of interest " and was granted permission to do so. (id. Appx. # 3, at 14, ¶ 106 , Appx. # 2, at 29)

Appellant was left " abandoned " by his counselman in the 25th hour with a cooperation agreement with the government, plea agreement that he did not knowingly and intelligently accept, and a 360 month to life guidelines sentencing range that he did not in fact bargain for.

To add insult to injury, the government then filed a motion for a downward departure for " 1-point " in consideration for his cooperation to date, as essentially a slap-int-the-face for the refusal to breach the plain and unambiguous terms of the agreement. (Appx. # 2, at 31 )

This act of abandonment was a prima facie " conflict of interest " in violation of the Sixth Amendment rights guaranteed to the effective assistance of counsel. See Culyer V. Sullivan, 466 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed. 2d 333 (1980) This is not a " theoretical division of loyalties. " See Mickens V. Taylor 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed. 2d 291 (2002).

Otake claimed in his sworn declaration in controvention of this:

" [I] neither encouraged not discouraged [Wilcox] to cooperate against Miller. However, if he choose to do so it would not have presented a conflict for me. "

(see id. Doc. # 656-1, at ¶ 9)

This in controvention to the fact that Wayne Miller had an ongoing relationship with Otake. Furthermore, that Wayne Miller was actually an –

P. 37

... associate of another one Michale Miske.  That Mr. Miske's M.O. is to infiltrate others criminal cases and persuade them.

Nevertheless, how it is that, upon Appellant's cooperation from these very individuals, that Otake immediately filed a motion to withdraw for a conflict of interest is oxymoronic and in direct controvention to the facts and the evidence.

Otake also swears in his  declaration that, " [I] did not have a specific reason to to believe a conflict existed, but I wanted to explore it with Wilcox to be sure. " (id. at ¶ 19)

> " [I] was assured by my conversation with Wilcox early on in my repres-
> entation that there was no conflict. ' much later in the course of
> my representation, after he started cooperating, Wilcox raised an
> issue that he though could arguably lead to a conflict regarding my
> representation of Miske. ' [I] never discouraged Wilcox from offering
> any information regarding Miske. ' **In fact, I advised him that if he
> had information to provide the government that may help his situation
> but he was afraid that it might create a conflict for me, that it
> would be better for him that I withdraw so that he could persue
> the route that gave him the best chance at the best downward
> departure. "**

**(id.)**

Again, this in controvention to Appellant's allegations that Wayne Miller was from the inception operating in collusion  with  Miske.  That, Otake knew full well of that fact.[3]

For, Otake to take the case, allow for all of these progressions, and then continue the attempts to breach the agreement entered into with the

---

n. 3: At the time of the making of the Section 2255 only Otake, AUSA Inci-
ong, Appellant, Miske, and Miller knew these facts. However, at the
time of the rulling in the denial of relief of the 2255, the district
court was smack in the middle of Miske's RICO trial, and Miller was
on the stand testifying as a star witness revealing these facts.

... government to exclude his childhood friend, this inclusion of cooperation against Wayne Miller, and Michael Miske, Appellant's paid benefactor, and his close associate, both close friends with Otakecame about by AUSA Inciong, not Appellant. As admitted by Otake, Appellant in fact sought counsel from Otake, who encouraged this cooperation. This knowing it would create a conflict of interest and gave the go ahead to do so. This to where he abandoned Appellant thereto.

There is material facts in dispute as to who sought cooperative measures and why. The district court should have held a hearing pursuant to 28 U.S.C. § 2255(b) and called AUSA Inciong and the government's investigators who were present to testify and clarify this conflict of facts. See Rodriguez-Penton V. United States, 905 F. 3d 481, 488 (6th Cir. 2018)(quoting United States V. Rodriguez-Vega, 797 F. 3d 781, 788 (9th Cir. 2015)) , and Quintero V. United States, 33 F. 3d 1133, 1137 (9th Cir. 1994)

The district court ruled that, " Ka'anoi fails to show any ' actual conflict of interest. '" (Doc. # 661, at 29)

The district court then stated, " As such, ' any potential conflicts arose only once Ka'anoi began cooperating with the government. '" (id. at 30, citing Otake's Declaration in the Govt's Resp. at Doc. # 656-1, at 8)) At that point after Ka'anoi raised concern over the potential conflicts, Otake encouraged him to provide any information he might have, including with regards to both Miske and Miller, and withdrew so that Ka'anoi could ' pursue the route that gave him the best chance at the best downward departure. '" (id.) The district court stated this was " far from inappropriate..." (id. at 30)

Here there is a factual dispute of matters that occured off-the-record, and an acknowledgement by the court that Appellant did raise the issue. He did raise the conflict concern, andultimately after counsel's advice, he himself withdrew for a conflict. There is a factual conflict of interest. See Earp V. Ornoski, 436 F. 3d 1058, 1065 (9th Cir. 2005)

The district court's rulling that, only after this incident the potential conflict arose, is also not supported by the record. There has been a retrospective conflict of interest because of Otake's relationships from the inception. Whether Appellant knew Miller or not, Otake stated that, " ... he never represented him. "

Not so fast. Being mindful that, Appellant claimed that it was Otake's relationships with Miske and Miller tainted his representation from the commencement. Matter of fact, what is of the day is that, the district court made this ruling in the pinnacle of the Miske Trial. This where Miller was testifying on the stand testifying to these very matters. See United States V. Michael Miske No. 19-cr-00099-DKW-KJM-1 (D. Haw.) This the week of February 9, 2024. (Wayne Miller testimony)

Known as " Cooperator 1 " in the Miske case, Miller testified in open court that, " he does in fact have a relationship with Thomas Otake. " (id.) This prior to Appellant's prosecution. (See Doc. # 664 Motion to Reconsider at pg. 7) Furthermore, that Otake was used by Miske in the past to keep tabs on other persons criminal cases. (id.) That, he has been conscripted by Otake in the past to infiltrate and direct the outcomes of or adversley influence such. (id. at Exh.-A, Att. # 1, pg. 2, ¶ 11-15)

That, Miske had used Otake in the past to discovery Wayne Miller's personal criminal matters in the mainland-California, to ensure that he had not cooperated, for the two were crime partners and Miske feared exposure. That, AUSA Mark A. Inciong in fact illicited this testimony from Miller in that proceeding. (id.)

The district court denied Appellant's Section 2255 motion antecedent to this testimony presented, however, during the time in which Miller was " on the stand. " (see id. 1-30-2024)

### (iii). The district court errored and otherwise abused it's discretion in denying Reconsideration under Fed. R. Civ. P. 59(e);

Upon denial, Appellant did receive information that Miller did testify to these very matters that " shattered Otake's sworn testimony " in this 2255 proceeding, that the district court used to deny relief in contested facts presented. (See Doc. # 664, EXHIBIT-A, and Att. # 1, Appx. # 8) This caused Appellant to make a motion to reconsider as opposed to making a Notice of Appeal under Fed. R. Civ. P. 59(e). (id. Doc. # 664)

Appellant attached copies of a " news article " that he received from family to the prison he is housed in the mainland at Safford, Arizona. (id.)

This proved outright that Otake lied in his sworn testimony in the § - 2255 (and Withdraw) proceedings. That, if Otake lied in regards to his relationship with Wayne Miller, and Michael Miske, then certainly his testimony was " not credible, " and the district court's credibility determinations without holding a hearing pursuant to 28 U.S.C. § 2255(b) was clearly in error and an abuse of discretion. (id) Appellant requested a sub-poena seeking to obtain all of the documents of the testimony and various others under Fed. R. Civ. P. 45(a)(1)(D). (id. at 8)

P. 41

That, as this now brought forth a whole slew of possible allegations that were relevant to Otake and his relationships with the AUSA Inciong the same, sought subpoena of any relationships with the government that Otake had. (id. at 9) Also, discovery the same under 28 U.S.C. § 2255, Rule 6(a).

That this was " newly discovered evidence " that should cause the district court to reopen the 2255 proceeding. (id. Doc. # 664, at 21)

Without any response from the government, nor any hearing, or the production of these documents, the district court again, in the heat of this RICO trial denied relief. (Doc. # 665)

The district court recognized the entirety of the claim, and request, however, astoundingly, the district court stated, " Otake never denied ' knowing Miller-' he simply denied representing himor having PERSONAL FRIENDSHIP WITH HIM. (id. at 7, citing DKT. # 661 at 29; DKT. No. 656-1, at 4 Otake Delcaration) Similarly, Otake explicitly confirmed that he had represented Miske, ... " (id.) (Appx. # 9)

This factual conclusion based upon such an unfounded basis is before this Honorable Court of Appeals as clearly in error. See Sch. Dist. No. 1J Multnomah Cty., Or. V. ACandS, Inc. 5 F.3d 1255, 1262-63 (9th Cir. 1993) Also, an abuse of discretion. see also United States V. Winkles 795 F.3d 1134 (9th Cir. 2015)

In the face of the denial of the request for documentation and other pertinent material, knowing full-well that Appellant was/is a pro se litigant without the access to these documents, the district court took aim at the newspaper article as if this could not support Appellant's request for reconsideration and as if the information therein was unreliable. (id. at 6)

P. 42

...(" Such evidence appears to largely consist of a blog post discussing Miske's ongoing and unrelated criminal trial ")

Appellant presented this information to which the district court should have accepted as true and accurate, for the facts asserted were not in " reasonable dispute. " See Fed. R. Evid. 201(b). " A fact is not " reasonably in dispute, if it is ' generally known, ' [or] can be ' accurately and readily determined from sources whose accuracy cannot reasonably be questioned. '" See Khoja V. Orexigen Therapeutics, Inc., 899 F. 3d 988, 999 (9th Cir. 2018)

Wayne Miller's testimony regarding the fact that he had been acquainted with Otake to the level of " friendship, " and that Michael Miske had on several prior occassions hired Otake to infiltrate other criminal cases with the intent to corruptly influence them, including his own, despite what the court ultimately found, directly controverted his sworn statements in the Section 2255 proceeding. id. 899 F. 3d at 1008. (Citing In re Atossa Genetics Inc. Scis. Sec. Litig., 868 F. 3d 784, 794-96 (9th Cir. 2017))

The district court should have at the very least held a hearing, granted the subpoena, discovery, and otherwise called all parties including the AUSA Inciong to testify to these matters respectfully. id. 28 U.S.C. § 2255(b). Nevertheless, this testimony directly controverted Otake's sworn statement in the 2255 proceeding, thus, rendering him wholly incredible and did open another pandora's box in regard to his loyalty's as an officer of the court. See Ex Parte Wall, 107 U.S. 265, 304, 27 L.ed. 552 (1881). As this testimony came to the forefront, the week of, however, subsequent to -

P. 43

... the ruling in the 2255 proceeding, upon motion, within the time with which to file an appeal, the court should have granted the Rule 59(e) motion to rehear the Sec. 2255 motion, and hold a hearing, respectfully. See Bannister V. Davis ___ U.S.___, 140 S.Ct. 1698, 1702, 207 L.Ed. 2d 58 (2020), see also Rishor V. Ferguson 822 F. 3d 482, 489-95 (9th Cir. 2016)

Appellant's right's guaranteed to conflict free counsel was violated as the result his convictions and sentence were in violation of the Sixth Amendment. The district court's rulings are in error, and otherwise an abuse of discretion. Moreover, Appellant has made a substantial showing of the denial of a constutional right, this Honorable Court of Appeals should issue a remand, respectfully. 28 U.S.C. § 2255.

### (iv). Subsequent Attorney Mark Kawata rendered Ineffective Assistance of counsel in violation of the Sixth Amendment in continuation and through the Sentencing phase as a whole;

In continuation as to the " totality of the circumstances, " upon, Otake's conflict of interest, and his abandonment of Appellant in the 25th hour, leaving him with a cooperation agreement, and plea agreement that he did not knowingly and intelligently accept, including a 360 month to life sentencing range that he did not bargain for, also a " one (1) level departure in exchnage for his cooperation " Appellant was advised that he needed to make for a withdraw of the plea agreement by subsequent attorney Kawata. (Appx. # 3, at 16, ¶ 122)

AS to the COVID-19 lockdowns, as admitted by Kawata in his sworn declaration in the 2255 proceeding he had difficulty visiting and otherwise communicating with Appellant at the FDC Honolulu. (id. Doc. # 656-2, at 3, ¶ 14)

Kawata, did make for a motion to withdraw for many of the reasons that were later presented by Appellant in his " off-the-record " sworn statements, however, lacking the matter of the threats and duress and coercion regarding the " statutory mandatory minimum life sentence " under 21 U.S.C. § 841(b)(1)(A), and 851. (see DKT. # 533)

Appellant made the presentment under 2255 exlaianing the reasons " why " these facts and claims were not embedded in the withdraw motion. This better known as " cause and prejudice. " See United States V. Braswell 501 F. 3d 1147, 1150 n. 1 (9th Cir. 2007), see also Massaro V. United States 538 U.S. 500, 505, 123 S.Ct. 1690, 155 L.Ed. 2d 714 (2002)

In his assertions, Appellant made clear that, he did not have any hand in the withdraw presentment, and Kawata did this motion on his own. (id. at Appx. # 1, at 44, citing Appx. # 3, ¶¶ 128-132)

In the face of Kawata's statements that he had difficulties visiting as to the COVID-19 lockdowns, he claimed to have put " over 100 hours to complete, ' over a period of several months. '" (id. Doc. # 656-2, pg. 3, ¶ 17)

He claims thereto, to have consulted Appellant, " multiple, ' at least eight in-person meetings, ' and more likely in excess of 12. (id. at 4, ¶ 18)     That he spoke with Appellant over the phone, including his mother and significant other. (id. at ¶ 20)   In that vein, Kawata claimed that Appellant did not raise the issue of of a " mandatory minimum life sentence with [Kawata] or any change in the law. " (id. at ¶ 27) That it was not a matter of concern " at that point. "

P. 45

This was claimed and Appellant asserted that, Kawata wouldnot return his phone calls, or answer them. He would not do so, until Appellant called his mother and she would contact Kawata and only then would contact be made. (id. Appx. # 3, at 17, ¶ 128 )

The communication was broken to the level of chaotic, and to have any of the facts concerning the preparation of the document was impossible. Also, Kawata has claimed to have prepared the withdraw on his own. (id.) The claim, that he had multiple in person meetings, without any evidence in support, including the " FDC Log-in documents, " or any other documentation to support this, is not supported by the record.

Appellant also claimed that, ultimately, when the documentation was prepared that Kawata had come to the FDC equiped only with a a " signature page, " for Appellant's endorsement, and as advised, in trust, did sign that page. This which Kawata outright admitted to in his Sworn declaration. (id. Doc. # 656-2, at 9-10, ¶¶ 54-56)

Appellant had no idea what Kawata was presenting to the court in the withdraw, and trusted that his Attorney would advocate correctly.

The fact of the matter is that relevant information that, Appellant desired to have to advocate on his behalf was not embedded in the withdraw, and the " reasons why, " is that Kawata omitted them.

Communicating with Appellant " competently and candidly " regarding the defense, and the presentments before the Court is counsel's duty's under the Sixth Amendment right(s) to the effective assistance of counsel. see id. Nunes, 350 F. 3d at 1053, also Turner, 281 F. 3d at 880, and ABA Standards for Criminal Justice, Prosecution and Defense Function 4-4.1(a).

P. 46

The Court directed response, and the government responded with Otake's declaration which did controvert the matters as presented, these that lacked Appellant's complaints in this 2255. (Doc. # 548-1)

Again, Kawata made contact with Appellant at the jail, with signature page that Appellant did endorse, however, he did request that if everything was needed, and Kawata advised that everything that needed to be in the motion was there. (id. Appx. # 3, at 18, ¶¶ 130-131)

Kawata then filed the reply to the response untimely. (id. Doc. # 554, & 558) The court held a hearing, and did chastise Kawata throughout the hearing, and did not allow for Appellant to speak. He then denied the motion to withdraw in a 25-page decision. (Doc. # 566)

The district cout made finding(s) in concern to the factual basis under the " fair and just reason standard. " See Fed. R. Crim. P. 11(d)(2)(B), see also United States V. Jeronimo, 398 F. 3d 1149, 1156 (9th Cir. 2005). This to which the review is made " on the record, " and not on facts " outside of the record. " id.

Kawata too made an objection to the PSR and the factual contentions therein leading through this process, however, did not expound in any meaningful manor upon any of the arguments or legal contentions. (id. Doc. # 519)  This lead into the sentencing proceeding which Kawata was representative.  Upon preparation, Appellant received " newly discovered evidence " from a credible source of information being used by the AUSA Inciong, that verified elements of fact that Appellant had. been arguing since day one. This, that he was not responsible for the 10 pounds of

... methamphetamines that was seized from codefendant Shane Kauhi in 2016. (See Doc. # 344) As Appellant had identified this seizure to the prosecution during and throughout his cooperative efforts as belonging to one person named " coach, " and continued to make known that he had not conducted any drug dealing in 2016, the government alleged that Appellant was balking and not being forthright. (DKT. # 515, 5K1.1 Mot. )

Here, Appellant had received evidence of his position. Kawata, instead of making a motion to renew the " motion to withdraw, " first inquired of AUSA Inciong as to if he in fact received any recent information under Barady/Giglio. Initially, AUSA Inciong denied any such inquiry, however, he then responded in the affirmative. Kawata, then filed a motion to continue sentencing. (id. Doc. # 575)

The district court then held a sentencing proceeding on June 17, 2021. At the hearing, the court addressed the matter before it, and the government, i.e., AUSA Inciong offered to " stipulate that the ' methamphetamines seized ...' would not be attributable to Appellant. '"

Appellant claimed in his 2255, in sworn testimony, that Kawata advised him that, he would make for an appeal any way, and that to simply accept the government's stipulation because it was better to appeal " Base Offense Level 36, than it would be to 38. (See id. Doc. # 647, at 38, citing 647-1, at 20, ¶ 144) [4]

Appellant wanted to renew the motion to withdraw for the new inform-ation went directly to the integrity of the factual narrative of the

n. 4: This inspite of the waiver provision in the written plea. (See Doc.- # 344, Plea Agreement), see also United States V. Justin Wilcox, No.- 21-10188, 2022 U.S. App. LEXIS 17191 (9th Cir. June 22, 2022)

P. 48

... written plea agreement that, Appellant had been contesting since the commencement of the action. He had been claiming that he did not have any involvement in any activity in 2016.  Also, numerous other facets of the facts in the plea agreement. [5]

Upon this " advice " he allowed the proceeding to ensue. (id.) The sentencing guidelines range was then reduced to reflect the agreement of the parties under USSG § 2D1.1(c)(2).

The district court, and the government however, sought to apply a " 4-level enhancment " under USSG § 3B1.1(a), that was not only, not supported by the record, but, also again, as to Appellant's continued objections to the terms of the agreement an element that he did not accept as " full-and-fair exchange. " See United States V. Hatcher, 414 Fed. Appx. 944, 946-47 (9th Cir. 2011), see also United States V. Whitney 673 F. 2d 965, 967 n. 7 (9th Cir. 2011)

That, it is asserted, that " had this been an element of exchange, ' Appellant would not have accepted the terms of the agreement, but would have insisted on proceeding to trial by jury. '" Id. Cosme Rodriguez, 49 F.4th 1205 (9thCir. 2022)(quoting Washington V. Lampert, 422 F. 3d 864, 871 (9th Cir. 2005)). (See 2255 Mot. Doc. # 646, at 49-55)

The court made a factual contention that, Appellant was at " the ' top of the pyramid, ' bringing into Hawai'i large quantities of drugs from a

n. 5: This also, as Appellant's requests for the audio/wire evidence to be turned over to him to verify that in 2016 he did not engage in any drug related activity.  The district court has now stated that, " [Appellant] has not identified what information is on the evidence or recordings, ..." (Doc. # 661, at 20) This is contrary to the facts and legal  contentions in the 2255 presentment, and is in error.

... source of supply in the mainland. " (Doc. # 601, Sent. Tr. at 43) Cited ...coconspirators, as " other leaders " in this case, including Kaui and Puha. (id.)  When making the actual finding, that court stated, " the defendant was quite clearly the ' local source of supply ' of both methamphetamine and cocaine duringthe referenced conspiracy period. " (id.) " he and noone else brought drugs into Hawai'i from his contacts in Las Vegas, and there ' is no evidence that anyone else was his equal. '" (id.) " [He] ' sold directly  to Mr. Puha, as well as Mr. Kaui.' Those individuals then subdistributed to others, both inside and outside the conspiracy,... (id.)   It then stated, " the defendant dictated the quantities and prices that his ' customers ' Mr. Kaui and Mr. Puha, would receive, what they would be paid for their efforts, and whether the product would be extended and to whom on a consignment basis. (id. at 14)

The court stated therewith, that " collectively, this is far more than what is enough to establish the basis for the four level 3B1.1 adjustment. (id. at pg. 15) "

Principally, this was a misunderstanding of the law and the requirements under USSG § 3B1.1(a).   As the plain language of the Leader/Organizer, in the commentary states, " to qualify for an adjustment under this section, the defendant must have been the ' organizer, leader, or supervisor of one or more other participants. '" See id. Whitney, 673 F. 3d at 975, n. 6. (Citing USSG § 3B1.1 cmt. n. 2 (2011))  The commentary states further that an upward departure, as opposed ot an enhancement, " may be warranted, however, in a case of a defendant who nevertheless exercized management responsibility over the property, assets, or -

P. 50

... activities of a ' **criminal organization.** '" (id.)

As the district court, Kawata was oblivious to the U.S. Sentencing Guidelines and the application of the Leader Organizer enhancement. Appellant demonstrated, how the district court had failed to identify in it's analysis any " criminal organizational structure " better known as a " hierarchy. ' (see 2255, Mem. of Law 51-53)

Like the Ninth Circuit in Whitney, which identified other Circuit decision, Appellant directed the attention to the Seventh Circuit's decision in United States V. Mayes, 370 F. 3d 703, 711 (7th Cir. 2004) Including other cases in the Ninth Circuit and the Seventh that demonstrated what a " criminal organization's hierarchy " entails which cases called for the application as to the evidentiary standard required. (id. citing United States V. Jackson, 207 F. 3d 910, 913 (7th Cir. 2000), and United States V. Collazo, 984 F. 3d 1308, 1315 (9th Cir. 2020)(quoting United States V. Martinez, 657 F. 3d 811, 815 (9th Cir. 2011))

Appellant even directed the attention to other out of the Circuit decisions in regards to cases, that did have a " hierarchy " submitted into the evidence to support it's finding. (id. at 53, quoting United States V. MArtinez-Vega, 826 F. 3d 514 (D.C. Cir. 2015), and United States V. Garcia, 757 F. 3d 315-16 (D.C. Cir. 2014)

The district courts finding that, there was a " pyramid " is nowhere in the record. No submission of any evidence of a " criminal ' organization.'" Moreover, Appellant directed the attention to the fact that simply " buying and selling drugs to someone " while " conspiring " with them does not make him involved in a overall organization. (id. 51-52)

P. 51

Nor does it make him their " Leader or organizer. " Also, that, telling someone how much he requests in exchange for his product, i.e., as the district court put it " setting prices, " make him anything other than a supplier. (id. Mem. of Law at 51-52)

" Consignment or ' fronting ' controlled substances '" does indicate more than a " buyer-seller relationship, " however, this is indictaive of conspiring with these individuals not " directing or controlling their activities. " (id. Citing United States V. Moe, 781 F. 3d 1120, 1125 (9th Cir. 2015), and United States V. Loveland, 825 F. 3d 555, 566-63 (9th Cir. 2016))

There was absolutely no " evidence " in the record to sustain that Appellant was involved in any " criminal organization, " nor " organizational structured system of drug activity, that would call forth the court to identify any " pyrimid, " nor apply such an egrgious enhancement to Appellant's sentence that he did not agree to in the plain language of the plea agreement. Whitney, supra.

Kawata made no attempts to research and produce a meaning-ful argument to this application, and based on the dynamics of the sentence, in connection with the plea agreement, the PSR, and the government's attempts, he was " [ineffective] under the Sixth Amendment, at the Sentencing proceeding ' in violation of Appellant's right(s) guaranteed. '" Appellant demonstrated this by clearly established Supreme Court law. See Glover V. United States, 531 U.S. 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed. 2d 604 (2001) and several authorities from the Circuit for the District of Columbia - (id. Mem. at 48, citing United States V. Aguiar, 894 F. 3d 351, 357-58 (D.C 2018), and United States V. Murray, 897 F. 3d 298, 308 (D.C. Cir. 2018)

Appellant's claims were not well taken. Much like the government, the district court vehemently rejected Appellant's claims. (see id. at 37-42) It did so again, bu identifying an incorrect reasoning of the law in concern to USSG § 3B1.1(a), and is again in error.

"... the [PSR] recommended that the enhancement applied, as the record established that Ka'anoi ' organized ' the charged ' drug distribution conspiracy ' and ' controlled the flow of the sale of the methamphetamine through his subdistributors across O'ahu. " (id. Doc. # 661, at 37, citing Doc. # 526 at 18)

Again, the court was referring to bringing drugs into the Islands and then " selling them to other individuals on the Island. " This is not controlling any one person, this is not itentifying any criminal organizational network, this is a vague and conclusory allegation of fact, that cannot support an ehnacement under USSG § 3B1.1(a).

Furthermore, the court cited that, Appellant did not have to agree to this enhancement in his plea agreement, and would not otherwise be binding upon the court. Again, the court misconstrued the essence of the Sixth Amendment claim before it that, Counselman, was " ineffective under the Sixth Amendment ' during the pre-trial, plea negotiations process, ' that lead to his acceptance of the plea agreement, " and had he knonw that this was available upon acceptance of that agreement, he would not have accepted any terms from the government and would have insisted to proceed to trial by jury. Including the fact that the application itself was/is in error. See United States V. Manzo 675 F. 3d 1204, 1210 (9th Cir. 2012)

P. 53

The district court also took attention to the government's presentment of Kawata's own sworn statement he made in the 2255 reponse where he outright admitted that he did not make for any meaningful argument against the erroneous application of the " four (4) level enhancement, " under the USSG's, citing this as " professional judgment. " (id. Doc. # 661, at 39, citing Govt's Resp. at Doc. # 656-2, ¶¶ 15-17)(" ... the only ' evidence ' that Ka'anoi was not a leader or organizer was his own statements ... [I] warned Ka'anoi it was important to maintain credibility with the court, and that offering arguments  that appeared to be disingenious would be viewed in a bad light. ' [I] warned Ka'anoi that to push the issue harder- and strenuously argue that [Ka'anoi] was not a Leader/organizer- would result in loosing credibility with the court and risking aless favorable outcome")

The court cited this assertion as " reasonable .. and ' ..credible.'" (id. at 39)    It outright demonstrates that Appellant requested the argument, it demonstrates that Kawata is oblivious to the U.S. Sentencing Guidelines and it's applications, including USSG § 3B1.1(a), and that he believed that, fighting for his client, especially to a matter that could give him a quarter of a century in federal prison as to such an application is disingenious and would somehow debilitate him. This is preposterous.

Counselman had a duty to defend his client, and he must have a basic understanding of the U.S. Sentencing Guidelines an it's applications, and he also must conduct an adequate investigation and prepare for such. See Bragg V. Galaza, 242 F. 3d 1082, 1088 (9th Cir. 2001)

Kawata was admittedly ineffective at the sentencing proceeding, and this prejudiced this Appellant to a constitutional injury, i.e., a four level increase in violation of the Sixth Amendment. See id.Glover, supra.

As Appellant demonstrated via numerous Circuit and out-of-Circuit case law to support Appellant's position of a viable avenue for any legal investigation preparing for the application of such a role enahcement that would be applied in such an egregious manor., supra.

The district court cited that these were not " binding authority, ' nor do they support Appellant's position. '" (id. at 39, at n. 12) On the contrary, Appellant supported his position on all four corners of the erroneous application of the 3B1.1(a) enhancement, as he has presented a factual demonstration that he did not agree to any application in the specific terms of the plea agreement, the PSR and the courts finding did not point to any one person, or any facts that would support the enhancement, the district court to this day misunderstands the law as applied to the facts under Section 3B1.1. (id. at 39-40, at n. 12, " Moreover, as the Court extesnively detailed at sentencing, here there is overwhelming evidence establishing Ka'anoi was the ' lead supplier ' and ' directed the sales activities ' of his subordinates. '")

Again, supplying drugs to someone does not render them, a " Leader or organizer. " " Selling drugs to someone, 'does not transform them to your **subordinate. '"** Furthermore, there is nothing in the record to support anything other than Appellant supplying drugs to these individual's and to which other factors that Appellant did plead guilty to support a lawful finding of " conspiring. " See United States V. Cruse, 805 F. 3d 795, 816 (7th Cir. 2014)(Citing United States V. Avila, 465 F. 3d at 798)

The district court's analysis is in clearly erroneous. id. Whitney, 673 F. 3d at 975. (Collecting cases)

... certainly, the district court did not take Appellant's contentions well, nor did it receive any collateral attacks upon it's erroneous finding's with open arms. Much like Kawata believed, however, this is not the standards as guaranteed by the Sixth Amendment. Under this purview, Counsel was not acting as the " guiding hand that the Constitution guarantees. " The government, the PSR, and the district court's analaysis are in error and Appellant should not have to suffer as the result. see id. This 4-level enhancement subjected Appellant to nearly a quarter of a century in prison. (" 294 months ")

Here, this collateral motion pursuant to 28 U.S.C. § 2255, did make a " substantial showing of the denial of a constitutional right under the Sixth Amendment ' right(S) to the effective assistance of counsel' at the sentencing phase of the criminal prosecution. " id. Nunes, 350 F. 3d at 1051., see also 28 U.S.C. § 2253(c)(2), and Glover, supra.

This Honorable Court of Appeals should issue a certificate of appealability, and remand with directions for this district court to hold an evidentiary hearing under 28 U.S.C. § 2255(b), OR vacate, correct or set aside Appellant's sentence and conviction as requested therein the presentment before it, respectfully. See Fed. R. App. P. 22(b)(2), and 28 U.S.C. § 2255, respectfully.

## VIII. CONCLUSION:

WHEREFORE, Appellant respectfully requests that this Honorable Court exercize it's properly endowed discretion and GRANT a certificate of appealability to the district court's denial of the motion pursuant to 28 U.S.C. § 2255, and vacate and remand this judgment with directions as requested herein. OR, any other directive it deem neccessary and proper.

**XI.**   **CERTIFICATE OF SERVICE:**

That I, JUSTIN KA'ANOI, APPEALLANT, do hereby swear, that I did, mail a true and correct and complete copy of this Request for Certificate of Appealability to to the Appellee, by placing such into the U.S. Mail, postage pre-paid, on this 11th day of July 2024, and addressed as follows: (28 U.S.C. § 1746)

| | |
|---|---|
| U.S. DEPARTMENT OF JUSTICE | JUSTIN KA'ANOI, PRO SE   7/11/24 |
| OFFICE OF THE U.S. ATTORNEY | USMS # 91349-022 |
| FOR THE DISTRICT OF HAWAII | FCI SAFFORD |
| 300 Ala Moana Blvd. RM. 6-100 | P.O. BOX 9000 |
| Honolulu, HI. | Safford, Arizona |
| 96850 | 85548 |

P. 57